27 C.C.P.A. (Patents)

## DAWSON v. MARTIN.
### Patent Appeal No. 4287.

Court of Customs and Patent Appeals.
April 29, 1940.

awarding to appellee priority of invention of the subject matter of counts 1 and 3 of said interference. Four counts were before the board upon appeal, but the board reversed the Examiner of Interferences with respect to counts 2 and 4 and awarded to appellant priority of the invention covered by said last-named counts. Appellee took no appeal from said decision, so only counts 1 and 3 are before us; they read as follows:

"1. In a loose leaf binder, a back section, a prong carrying plate slidably secured to said back section, and an outer cover member hinged to said prong carrying plate whereby said prong carrying plate may be slid by manipulation of said outer cover member.

"3. In a loose leaf binder, a back section, a prong carrying plate slidably secured to said back section, an outer cover member hinged to said prong carrying plate, said prong carrying plate being slidable by manipulation of said outer cover member, and a plurality of ears on said back section adapted to limit the sliding movement of said prong carrying plate and said cover member."

The interference is between an application of appellee filed November 9, 1934, and a patent, No. 2,073,049, issued to appellant on March 9, 1937, upon an application filed December 29, 1934. The counts correspond to claims in appellant's patent and were copied therefrom by appellee.

The general subject matter of the invention was described by the Primary Examiner as follows: "The invention relates to a loose leaf binder of the overlapping prong type adapted to receive a plurality of banks of overlapping sheets and to means in the binder providing for a shifting of one of the opposed sets of overlapping prongs longitudinally of the binder relative to the other set by a manipulation of one of the cover members of the binder."

Benjamin Schlosser, of Chicago, Ill., for appellant.

A. Trevor Jones, of Chicago, Ill., for appellee.

Before BLAND, Acting Presiding Judge, and HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences

Inasmuch as the preliminary statement of appellant alleged no date of invention prior to appellee's filing date, appellant was placed under an order to show cause why judgment on the record should not be issued against him.

Thereafter, and within the motion period, appellant moved to dissolve the interference upon the ground that appellee's disclosure did not support the counts. This motion was denied by the Primary Examiner; whereupon the Examiner of Interfer-

ences awarded priority of invention to appellee as to the invention defined in each of the counts.

As hereinbefore stated, the Board of Appeals reversed the decision of the Examiner of Interferences with respect to counts 2 and 4, but affirmed it as to counts 1 and 3.

The only question before us is whether or not appellee's disclosure supports counts 1 and 3. We will first consider count 1.

It is admitted that appellee discloses a back section, a prong carrying plate, an outer cover, and that the prong carrying plate may be slid by the manipulation of said outer cover member; but appellant contends that appellee's prong carrying plate is not slidably secured to the back section of the binder disclosed by appellee.

Appellant discloses two back sections hinged together. Each of said back sections comprises two wall members. Appellant's prong carrying plate is mounted in one of the back sections, and this back section is slidably secured to the prong carrying plate by means of what is called a hinge plate.

Appellee discloses a three-part back section, one of which parts is termed the base, flanged upwardly to provide a pair of relatively short upstanding walls. Hinged along the upper edge of each of said walls is a side member, termed a "wing," the purpose being to permit a slight but limited movement of the wings toward or away from each other.

The principal question in the case with respect to count 1 is whether these wings comprise a part of the back section of appellee's device. We agree with the Primary Examiner, in his decision upon the motion to dissolve, that these so-called wings are parts of the back section of appellee's device; and the mere fact that the wings are hinged to permit limited motion from and toward each other does not prevent their forming parts of the back section of the device disclosed by appellee. The prong carrying plate is slidably secured to the back section by means of being spot welded to a plate that is hinged along the upper edge of one of the wings above described, and which wing we hold to be a part of appellee's back section.

Appellant contends that appellee's plate is not slidably secured to a back section because of the intervening plate to which it is welded. We do not think this point is well taken. After the welding has taken place the two metal plates welded together may properly be denominated a single plate, in so far as the counts before us are concerned.

Appellee calls attention to the fact that, under appellant's theory, the count would not read upon his own patent, for the reason that, like appellee, he welds his prong carrying plate to another plate, which last-named plate is slidably secured to his back section.

We have no doubt that appellee's disclosure fully supports count 1.

With respect to count 3, the difference between it and count 1 is the element reading: "a plurality of ears on said back section adapted to limit the sliding movement of said prong carrying plate and said cover member."

In appellant's patent this element is described as a "plurality of ears or projections * * * bent from the outer edge of the back section." In appellee's disclosure the structure adapted to limit the sliding movement of the prong carrying plate and the cover member is described as "hinge lugs."

It is appellant's contention that even if appellee's hinge lugs be the equivalent in function of appellant's "ears," it is well established that the doctrine of equivalents does not apply in interference proceedings, and that therefore it cannot be held that appellee's disclosure supports the count.

The doctrine of equivalents in interference proceedings, as stated by appellant, is well established; but we think it has no application to the case at bar. We do not understand that either of the Patent Office tribunals (the Primary Examiner or the Board of Appeals) held that appellee did not disclose "ears" to limit the sliding movement aforesaid, but that since the hinge lugs of appellee perform the same function as the ears disclosed by appellant, appellee's lugs could properly be held to be ears in fact. It will be observed that in the quotation hereinbefore made from appellant's patent the structure under consideration is described as "ears or projections." In this description we do not think that two different types of structure were intended to be described.

Knight's Mechanical Dictionary defines *ear* and *lug* as follows:

"Ear. A small projection on an object, usually for support or attachment; * * "

"Lug. A projecting stud or *ear* by which an object is grasped or supported, or which affords a bearing or point of attachment; * * *" (Italics ours.)

There is here no question of equivalency, but there is involved merely the calling of essentially the same thing by two different names, and we find no merit in the contention of appellant that appellee's disclosure does not support count 3.

■ Appellant further contends that the ears upon his device have a function in addition to that recited in the counts, viz., the holding of the prong carrying plate against lateral or vertical movement, and that therefore appellee's disclosure does not support the counts.

We find no merit in this contention. Appellant in his patent saw fit to claim ears functioning in one particular way set out in the claim corresponding to count 3. Appellee's ears or projections do limit the sliding movement of said prong carrying plate and the cover member.

Appellee surely could not avoid infringement of appellant's claim corresponding to the count by showing that the ears of appellant's device had another function not claimed by appellant, but only described in his specification.

Upon this point appellant really seeks to add another limitation to the count not expressed or implied therein, which, of course, may not be done.

Appellant cites a number of cases wherein it was held that for one device to be the equivalent of another it must perform the same functions as such other. As hereinbefore stated, there is no question of equivalency here involved, for, in so far as count 3 is concerned, appellee discloses every element thereof, the only difference being that the ears named in the counts are termed by appellee "hinge lugs." Calling substantially the same things by different names does not involve the doctrine of equivalency.

Appellant insists that if the counts are construed broadly enough to read on appellee's disclosure they are unpatentable over the prior art.

■ It is elementary that in interference proceedings counts are to be given the broadest construction of which they are reasonably capable, but limitations expressed in the counts may not be disregarded.

■ It is also well established that the court is not justified in reading limitations into counts, for the purpose of changing the plain import of their terms, upon the contention of one of the parties that, unless limited in accordance with his disclosure, they are not patentable, and, if so limited, the adversary can not make them. Deibel v. Heise et al., 46 F.2d 570, 18 C.C.P.A., Patents, 907.

■ Appellant having deliberately elected to claim the invention broadly, he is not in a position to insist that limitations be read into the claims of his patent which correspond to the counts before us for the purpose of avoiding the issue of priority. Deibel v. Heise et al., supra.

■ The counts here involved are broad and there is no ambiguity in their terms. They were broadly construed by the Primary Examiner and by the Board of Appeals.

In the case of Marshall & Levandosky v. Ledwinka, 67 F.2d 495, 21 C.C.P.A., Patents, 728, we held that where the Board of Appeals gave a count a broad interpretation we were not at liberty to inquire whether such broad interpretation rendered the count unpatentable.

■ Likewise we have held that where the Board of Appeals construes counts narrowly in order to avoid prior art, we will give the same construction. Kauffman II v. Etten et al., 97 F.2d 134, 137, 25 C.C.P.A., Patents, 1127.

In the last-cited case we said: "Upon both reason and authority, we hold that where the Board of Appeals of the Patent Office interprets the counts of the interference narrowly, with the declaration that otherwise interpreted they would not be patentable over the prior art, such interpretation must be accepted by us in an interference proceeding such as that at bar."

As hereinbefore indicated, no such situation exists in the case at bar requiring us to give a narrow construction to the counts.

We are in agreement with the views expressed by the Board of Appeals in its decision denying a petition for reconsideration, as follows: "In considering counts 1 and 3 which we held to read on the Martin application, we found no reason for giving the language a strained construction in order to read these counts on the Martin structure, and therefore we found no reason for considering the prior art cited by petitioned. When the terms used in these two counts are given their plain and ordinary meaning, these counts are clearly

readable on the disclosure of Martin. * * *"

In conclusion, we are of the opinion, as was the board, that counts 1 and 3 clearly read upon appellee's structure, without giving the language of the counts a strained construction. Both parties clearly disclose the invention defined in the counts, and there are no limitations therein which are not clearly supported by appellee's disclosure.

The decision of the Board of Appeals is affirmed.

Affirmed.

GARRETT, Presiding Judge, took no part in the consideration or decision of this case.