34 C.C.P.A.(Patents)
## KOSTICK v. WINTER et al.
### Patent Appeal No. 5268.

Court of Customs and Patent Appeals.
June 3, 1947.

Frank A. Whiteley, of Minneapolis, Minn., for appellant.

August P. Winter, pro se.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

The Board of Interference Examiners of the United States Patent Office, in a patent interference proceeding, awarded to appellees priority of the invention defined by a single count, which was a claim taken from appellees' patent No. 2,294,531, issued September 1, 1942, on an application filed in the Patent Office on April 17, 1940. The application of appellant here involved is an application filed November 23, 1942, for reissue of its patent No. 2,283,857, granted May 19, 1942, on an application filed April 26, 1940. The reissue application was for the purpose of copying claim 1 in appellees' patent, which is the count in issue and which reads as follows: "In a grain dump, a pneumatic air actuated hoist, said hoist embodying an upwardly directed open ended bearing, a cylinder with a base depending from said bearing, *a sleeve open at both ends* floatingly telescoped within said cylinder, a piston with a piston rod mounted to slide telescopically within said sleeve, and a wheel receiving platform mounted on said rod for hoisting front ends of vehicles." (Italics added.)

Appellant will be hereinafter referred to as Kostick and appellees will be referred to as Winter, since it is understood that Slasor is no longer interested in the interference contest.

Kostick, being the junior party (by nine days), was under the burden of proving that he was the first inventor of the subject matter of the involved count by a preponderance of the evidence.

In view of our conclusion herein but one issue needs to be determined since it is controlling of decision in the other issues presented.

It will be noted that the underscored portion of the count calls for "a sleeve open at both ends." Kostick's application which resulted in a patent discloses such a device when giving the construction to that claim that the board has here given. However, Kostick depends, for an earlier reduction to practice, upon work done in the way of drawings and actual construction and operation of a device during a period beginning in 1937.

The invention relates to a dumping device which operates in connection with a pit for dumping loads of grain at a point where they can be picked up by elevator machinery and hoisted into the elevator. The front part of a truck is by this automatic dumping lift raised up to a point where the grain passes out at the rear end of the vehicle.

Long before any date to which Winter is entitled for reduction to practice or conception or introduction into this country, Kostick had conceived and disclosed and caused to be constructed a device which apparently in all respects responded to every term of the count involved unless it was, as the board held, that said structure did not involve "a sleeve open at both ends."

In accordance with the drawings and the disclosure, the record shows that Kostick caused to be constructed a device, the nature of which is thoroughly proved in the record, and it was used for a long period of time and finally sold, and, according to the record, was still in use when the interference proceeding began. In this device, made in accordance with the early drawings, the sleeve referred to in said count is said by the board not to be open at both ends, because at one end, instead of being open across the entire diameter, there is a small inside rim or ring which is said to be used for strengthening the cylinder. The opening embraces most of the bottom diameter of the sleeve and is for the purpose of permitting air to enter, and, from the record, we conclude that the opening is sufficient for such purpose.

At any rate, Kostick's licensee, the R. R. Howell Company, which made dump lifts in accordance with said drawings in which the openings consisted of only a portion of the bottom diameter, was notified by winter that it was infringing Winter's patent, the one involved here.

During the prosecution of the interference, so far as we have been able to discern from the record, the question that Kostick's early work did not produce an article the sleeve of which was open at both ends was never mooted. Winter, the record discloses, had as many as three lawyers at different times engaged in the prosecution.

of his application and the interference. However, he did not appear personally or by counsel before the Board of Interference Examiners but appeared there by brief *pro se* and here he appeared at oral argument representing himself as the inventor.

The board, in passing upon the issue as to whether or not Kostick's early work met the limitation of the count with reference to the "sleeve open at both ends", held as follows:

"Following the final rejection all the claims were canceled and the claims now standing in the patent were substituted, with the brief comment that they are 'patentable over the references, and define the invention over common telescopic pistons and cylinders as shown in Oglesby, or ordinary cradles as in McEachern.' The only feature of the claim which has become the count, that is not disclosed in the combination of references used by the Examiner, appears in the limitation, 'a sleeve *open at both ends* floatingly telescoped within said cylinder'. (Emphasis added.) The phrase 'open at both ends', which does not appear in the claims canceled in acquiescence to the final rejection, *obviously was included to distinguish the patentee's sleeve from the type of sleeve shown by Oglesby.*

"Both parties disclose this feature which gives the claim life. The sleeve 14 of Winter and Slasor * * *, as well as the sleeve 17 of Kostick * * *, is 'open at both ends.'

\* \* \* \* \* \*

"Kostick testifies that after conceiving his invention he discussed it with Hogenson, and followed his suggestion to have Erickson make drawings of it. Exhibits 1 to 4 are offered as these drawings. Of these drawings, Exhibit 2 does not reveal the structure of the lower end of the sleeve, which is covered by the outermost cylinder. Exhibits 1, 3 and 4 contain sectional views disclosing the sleeve. However, they reveal that it is not open at both ends, but is provided, at its lower end, with a head having a relatively small aperture, substantially the same as the sleeve disclosed in the Oglesby patent. *As previously explained, the limitation that the sleeve be 'open at*

*both ends' is the limitation that gives the count life. Such limitations can not be ignored."* (Rule 130, last paragraph; Wyland v. Simons, 93 F.2d 44, 25 C.C.P.A. (Patents) 780, 491 O.G. 234, 1938 C.D. 194; Lawson v. Davis, 129 F.2d 873, 29 C.C.P.A. (Patents) 1217, 554 O.G. 687, 1942 C.D. 661. Accordingly, it is held that the drawings, Exhibits 1 to 4, do not disclose the invention in issue. (Italics added.)

It is contended on behalf of the party Kostick that those claims which had been rejected by the examiner were rejected on the ground of indefiniteness and that when they were corrected so as to remove this objection the substituted claims were readily allowed. In other words, it seems to be the view of Kostick that the limitation, "open at both ends," was unimportant so far as distinguishing the claim from the prior art was concerned.

With respect to this it must be pointed out that the board definitely stated that this feature did not appear in the claims which were cancelled after their rejection by the Primary Examiner and that it was the only feature not disclosed in the combination of references upon which the examiner's rejection was based and, furthermore, the board expressly held the limitation, "open at both ends," to be that which gave life to the claim and which "gives the count life."

Therefore, whether or not there is any merit in the holding of the board that the limitation in controversy lends patentability to the count over the prior art is not a matter for our consideration. The board has held that it does give the count life, and we are bound by that holding.

The law authorizes us to review issues involved in an interference proceeding on the question of priority and matters ancillary thereto, which includes the right to make the count. Walsh et al. v. Davidson et al., 101 F.2d 224, 26 C.C.P.A. (Patents) 812, 815.

However, we have frequently held, and we think properly so, that limitations, even if they appear immaterial to us, cannot be ignored (Atherton v. Payne, 54 F.2d 821, 19 C.C.P.A. (Patents) 867, and that we will give the count the same con-

struction as was given by the tribunals below in the event such construction was given to avoid the prior art and thus render the count allowable. Dawson v. Martin, 111 F.2d 300, 27 C.C.P.A. (Patents) 1155; Vietti et al. v. Dow et al., 120 F.2d 360, 28 C.C.P.A. (Patents) 1156.

Even if we were of the opinion that the board was led into error in the construction of the count and that the limitation is immaterial with respect to making it patentable over the prior art, we, under our jurisdiction are not privileged to say so. If it be properly held elsewhere that the limitation is immaterial and that therefore the claim is invalid in view of the prior art, it is no concern of ours.

The other issues presented, in view of our decision on the question of the sleeve being open at both ends, need not be considered, although it is very earnestly argued that the board erred in holding that counsel by a cross-examination question elicited the fact that Winter had a Canadian patent which was not introduced into the record. Moreover, Winter claims that he introduced the invention into the United States previous to all the matters referred to herein, but the Patent Office seemed to take no stock in this contention and we, in view of our conclusion, need not consider this matter here.

We think something ought to be said here with respect to the conduct of Winter. Kostick's counsel has been very lenient and patient concerning much abusive language directed toward him by Winter. Winter's brief and his reply brief to Kostick's reply brief are replete with accusations of fraud and crookedness although the record warrants no such conclusion. On the contrary, the record shows that Winter discharged his own reputable lawyers and proceeded to file meritless motions and to address letters to the court and the Patent Office stating matters that are not found in the record, and generally conducted himself in such a way as to deserve the censure of the court.

We want it definitely understood that our holding herein is purely on a question of law, and if we opened up the pandoric box by considering patentability under circum-

stances like those at bar we would greatly impair our usefulness in judicially reviewing the board's decisions in interference cases. We have not permitted the fact that Winter is his own attorney or the unwarranted injection of alleged but unproven facts into the record to influence us in the least.

For the reasons stated, however, and giving the construction to the count in the respects referred to the same construction as was given by the board, we must hold that Kostick has failed to prove by a preponderance of the evidence, under the settled rules of interference practice, that he was the first inventor of the subject matter of the count.

During the oral argument of this case a motion was made by Winter to dismiss the appeal, but no satisfactory grounds were given for such motion and the same is denied.

The decision of the board, for the reasons stated, is affirmed.

Affirmed.