30 C.C.P.A. (Patents)
## POTTS v. KIMBALL et al.
### Patent Appeal No. 4705.

Court of Customs and Patent Appeals.

Feb. 1, 1943.

Harold B. Whitfield, of Chicago, Ill. (C. B. Hamilton, of Washington, D. C., of counsel), for appellant.

Marvin J. Reynolds, of New York City, for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

The Board of Interference Examiners of the United States Patent Office, in the instant interference proceeding, awarded priority of invention of the single count involved to the appellees, Vernon R. Kimball and Robert F. Dirkes (hereafter referred to as Kimball et al.). Louis M. Potts (hereafter referred to as Potts) has here appealed from the board's decision.

The interference involves an application of Potts, filed March 25, 1931, and renewed May 3, 1939, and a patent of Kimball et al., No. 2,135,376, issued November 1, 1938, on an application filed October 22, 1935. The real parties in interest are Potts' assignee, the Teletype Corporation, and Kimball et al.'s assignee, the Western Union Telegraph Company.

Originally, the interference was declared upon two counts, which were claims copied by Potts from the Kimball et al. patent. Both parties filed preliminary statements, and Kimball et al. alleged no date earlier than Potts' filing date of March 25, 1931. Kimball et al. were accordingly placed under order to show cause why judgment on the record should not be entered against them. In answer to such order Kimball et al. filed a motion to dissolve as to both counts. The motion was, by the Primary Examiner, granted as to one count and denied as to the remaining count, which forms the issue in this interference.

The count reads as follows: "1. Signal receiving apparatus comprising a series of movable selector levers, *an independently rotatable selector cam sleeve with a series of cams thereon equal in number to said selector levers* and movable past said levers in substantial synchronism with received line impulses, *means operated by said cam sleeve to initiate the rotation of a second cam sleeve, means operated by said second cam sleeve to initiate the rotation of a third cam sleeve,* and means operated by said third cam sleeve to effect a printing operation and a paper feeding operation." [Italics ours.]

Kimball et al.'s motion to dissolve was on the ground that Potts could not make the count because his application allegedly did not show the following three limitations of said count:

1. An independently rotatable selector cam sleeve with a series of cams thereon equal in number to said selector levers;

2. Means operated by said cam sleeve to initiate the rotation of a second cam sleeve; and

3. Means operated by said second cam sleeve to initate the rotation of a third cam sleeve.

The Primary Examiner held that none of these contentions were tenable and accordingly denied the motion to dissolve as to count 1.

The Board of Interference Examiners held that although Potts could make the second and third limitations of the count, he could not make the first limitation. It therefore awarded priority of the invention of the count to Kimball et al.

In view of our conclusion, it is necessary for us to consider only the first limitation. We are of the opinion that the Potts disclosure does not support it.

The inventions of both parties relate broadly to complicated signal receiving apparatus. That of Potts is particularly devoted to such uses as for stock-ticker bulletin boards, while that of the other party, Kimball et al., is used in recording telegraph messages. Many parts of the devices are not of concern here. The particular issue at bar has to do with what Potts, in his specification, refers to as a "selector mechanism," which is shown in his Fig. 65. Additional reference numerals were inserted on Fig. 65 for the purpose

of explanation, and the resultant drawing appears in the record as Exhibit A. We here reproduce Exhibit A.

In discussing this figure of the Potts disclosure, the Primary Examiner had the following to say:

Fig. 65

Fig. 66

INVENTOR
LOUIS M POTTS

BY J. H. B. Whitfield

ATTORNEY

"With regard to count 1, Kimball et al argue that the structure of Fig. 65 does not support count 1 in that it calls for a cam sleeve with a series of cams thereon equal in number to the selector levers. They state that since the Potts disclosure has six selector levers and twelve cams it does not fulfill the language of the count. It is to be noted, however, that the cams of the Potts disclosure are in pairs with one pair for each selector level and that each pair of cams performs the same function as each single cam of the Kimball et al device, i. e. one selector lever is selected or set by each cam of the Kimball et al device and one selector lever is selected or set by each pair of cams of the Potts device. In other words Potts discloses a series of cams *(a series of cam pairs)* equal in number to the selector levers." [Italics ours.]

The board described the Potts device as follows:

"In the device as disclosed by Potts, with particular reference to Exhibit A, the single selector magnet 745A is operated in accordance with the selection signals transmitted over a wire line. A cam sleeve 744 B operates in synchronism with the permutation signals and this cam sleeve has mounted thereon a series of twelve cam levers 744A. In accordance with the movement of the selector magnet 745A, one or the other of a pair of cams 744A are moved under one or the other of the forked ends of the selector levers 744 and the lever is tilted to one position or the other depending on whether a mark or space signal was transmitted at that instant. When the complete selection signal, consisting in this instance of a start signal, six permutation signals which may be either mark or space, and a stop signal, has been sent, the series of six levers 744 are tilted either clockwise or counterclockwise in accordance with whether a mark or space signal was transmitted at the time they were actuated by the cam means 744A. After the signal has been set up in the permutating levers 744 the bail member 746B riding on the cam 746A drops in a notch allowing arm 746C to tilt and release the cam 2018 for rotation. The cam 2018 in rotating, rotates the bail 750 which in turn lifts the levers 751 to contact the selecting levers 744. The levers 751 by contacting with the selector levers cause the discs 147 to rotate a small amount either clockwise or counterclockwise, depending on the position of the tilt of the selector levers 744. The permutation signal is therefore set up

in the six discs 147 by permutably rotating these discs. The discs 147 have a series of notches in their periphery which are so positioned that any permutation of the rotation of these discs will allow for a registry of only a single notch in the circumference of these discs. About the spaced circumference of these discs are located pins 148 which when the notches of the discs are in alignment are pressed inwardly towards the axis of the discs. On reception of any permutation signal, the discs 147 having been rotated in accordance with that permutation, one pin 148 is allowed to drop in the aligned notches. Through the center of these discs passes a rotating shaft 1946 bearing a rotating arm 197 which is so located that it will contact the pin 148 that has dropped into the aligned notches. When this arm contacts the selected pin 148, the arm is rotated to move the cam sleeve 1993 towards the discs and by action of this cam sleeve the lever 1991 is rotated to release the latching bar from the latch 1976. The release of this latching bar allows the shaft 1977 to operate for a quarter revolution and through the cam 1973 and linkage bars the tape is advanced and pressed against the typewheel to print the selected character.

"In the Potts device the typewheel 1967 is continuously rotating and operates in synchronism with the shaft 1946 and the printing is accomplished by causing the tape to be pressed against the typewheel to be pressed against the typewheel at the instant that the proper letter passes the striking position on the tape."

In making its holding on the limitation of the count here under consideration, the board had this to say:

"The party Kimball et al. contends that Potts has no right to make the count for the reason that he does not disclose a 'selector cam sleeve with a series of cams thereon equal in number to said selector levers.' Kimball et al. point out that in the Potts device his cam sleeve 744B has twelve cams 744A mounted thereon while only six selector levers 744 are used. Kimball et al. therefore contend that Potts does not have a series of cams equal in number to the selector levers but, on the contrary, has twice as many cams as selector levers. The primary examiner, in passing on this question, stated that the cams of the Potts disclosure were in pairs, with one pair for each selector lever and that each pair of cams performed the same function as each single cam of the Kimball et al. device or,

in other words, that Potts disclosed a series of cams (a series of cam pairs) equal in number to the selector levers.

"It is true that the device as disclosed by Potts performs the same function as the device of Kimball et al. and we believe that it is likewise true that the pairs of cams as disclosed by Potts are equivalent to each of the single cams of Kimball et al. However, the doctrine of equivalency is not applicable to interference proceedings. Dawson v. Martin, 27 C.C.P.A. 1155, 111 F. (2d) 300, 519 O.G. 523. The issue involved herein relates to a mechanical structure and the mere fact that the device as disclosed by Potts may perform an equivalent function does not entitle him to a claim which is specific to a structure other than that disclosed by him. The count clearly and unequivocally states that the cam sleeve contains a series of cams equal in number to the selector levers and it is not seen that this clear and unambiguous language can be read on a device wherein twice as many cams as selector levers are provided."

It seems to us that the board has arrived at the right conclusion. It is also apparent that the examiner would have arrived at the same conclusion as the board, had it not been for the fact that he turned the issue on the question of equivalency. He stated that "each *pair of cams* performs the cam function as each single cam of the Kimball et al device." [Italics ours.] In other words, he stated that where Kimball et al. have a single cam, Potts has a pair of cams. It is not disputed that Kimball et al. have but five cams and five selector levers.

▮ Potts argues that Kimball et al. have a spring to perform the function of one of his (Potts') cams. We regard the phrase, "cam sleeve with a series of cams thereon equal in number to said selector levers," as a definite, specific limitation of the count. Such limitations may not be ignored in interference proceedings like the one at bar, and it is not sufficient to urge that the structures are equivalents in function. In re Key, 76 F.2d 398, 22 C.C.P.A., Patents, 1098; Mitchell et al. v. White, 93 F.2d 216, 25 C.C.P.A., Patents, 788.

▮ Potts concedes that the law is settled that "definite" limitations cannot be ignored and that the doctrine of equivalency does not apply in interference proceedings. He argues, however, as follows:

"This Court has consistently and properly declined to apply the doctrine of equivalency in the construction of counts in Patent Office proceedings. The doctrine is not pertinent to the present facts, for even though the respective structures are the full equivalent and operate interchangeably, the count fails to include a positive and definite limitation, which precludes reading the count on the Potts structure. There is involved in the present case merely the calling of essentially the same thing by two different names.

"The foregoing conclusion is further substantiated by considering the word 'cams' as cam means on the rotatable selector cam sleeve equal in number to the selector levers. Cams definitely constitute cam means, and Potts, as is equally true of Kimball et al., discloses a selector cam sleeve with cam means in the form of cam pairs, double acting cams, equal in number to the selector levers.

"The language of the count is broad enough to cover the Potts machine which not only performs the same function but uses the same means, *i. e.*, a cam as Kimball et al. It is not a question of equivalency of means but an identity of means. *The cam means of Potts is identical in function* to the cam means of Kimball et al., to-wit, operating the selector levers individual thereto." [Italics ours.]

▮ It will be observed from the foregoing that appellant argues that the question here is one of "identity" rather than of "equivalency." Immediately following that contention, however, is the statement that the "cam means of Potts is identical in function to the cam means of Kimball et al. to-wit, operating the selector levers individual thereto." It seems clear to us that this last statement is based entirely on the doctrine of equivalency, as was found by the board. Moreover, the contention of Potts that his cam means is identical with Kimball et al.'s cam, since it performs the same function, is not convincing. They are certainly not identical structures, and even if it were conceded that they are identical in function, it would make no difference because we are concerned here with structure and not with function. However, there can be no dispute but that Potts' two cams, or pair of cams, perform the same function as one of Kimball et al.'s cams *and a spring and second cam sleeve.* Certainly, upon that fact it cannot reasonably be concluded (if it were important here) that Potts' *"cam means"* performs the same function as Kimball et al.'s *cam.*

Potts also argues that he discloses a "plurality of integral double acting cams." In view of our conclusion, it may not be essential to answer this contention, but we do not think that such is a fair description of Potts' structure. That language would imply that each selector lever is in fact operated by a single cam which has a double action. As we see it, each cam acts independently and in separate selecting cycles. In moving a selector lever in one direction, one cam does the work in that particular cycle, and if the lever is to be moved in the opposite direction, it is so moved in a different cycle by the action of the other cam. It seems, therefore, that Kimball et al.'s contention that each cam acts "entirely independently of the other and in different printing cycles" is correct.

In his application, Potts did not fully describe the here-involved selecting device or mechanism, which is but a part of the whole machine of the Potts disclosure. Several numerals now on Exhibit A were not referred to. Potts contented himself for the most part by saying that the selecting device of the instant application is "essentially the same as that illustrated and described in a copending application No. 348,612 filed March 20, 1929 by S. Morton et al" (which matured into patent No. 1,821,110, September 1, 1931).

In determining what breadth of construction we should give to the term "cams" it would seem important to refer to the Morton et al. patent. We find there the following description of the part or mechanism to which the Potts application refers in the last above quotation:

"The selector cam drum * * * comprises a hollow cylinder with twelve selector cams * * * projecting from its outer surface. Six of these cams are marking cams and six are spacing cams." [Drawing numerals omitted.]

It seems reasonable, therefore, to conclude that Potts, when he filed his application, thought he had a cylinder with twelve selector cams instead of six, for which he now contends.

Holding as we do that the Potts structure does not support the first limitation of the count, we must conclude that Potts cannot make a claim corresponding to the count here involved and that therefore the board properly awarded priority of the invention of the count to Kimball et al. The decision of the board is accordingly affirmed.

Affirmed.