38 C.C.P.A.(Patents)
### KLEINMAN v. STEINBACH.
### Patent Appeals No. 5703.

United States Court of Customs and Patent Appeals.

March 6, 1951.

Jacob L. Kleinman, pro se.

Conrad Christel and Edwin T. Bean Buffalo, N. Y. (Bean, Brooks, Buckley & Bean, Buffalo, N. Y., of counsel), for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

GARRETT, Chief Judge.

This is an interference proceeding which comes before us by appeal from the decision of the Board of Interference Examiners of the United States Patent Office awarding priority to appellee.

The subject matter is described in the decision of the board as "an electric dry shaver having a shaving head including a stationary member and a complementary reciprocating movable member arranged to provide two, or more, separated cutting zones."

Two counts are involved. They read:

"*Count 1.* A shaving device comprising a handle and hair shaving means secured to said handle, said hair shaving means comprising a plurality of individual spaced apart laterally-shearing cutting units, each of said units comprising cooperating stationary and movable shearing elements, said stationary shearing elements provided with shearing edges disposed laterally with respect to the top face of said units, the movable shearing elements engaging the stationary shearing elements in cutting relation along a plane which is at an angle to the plane tangent to the tops of the units, actuating means arranged within said handle and extending therefrom to engage the said movable elements to move the same in unison and transversely of said handle, and a guard extending at least in part over the movable teeth.

"*Count 2.* A shaving device comprising a handle and a plurality of shaving heads, each of said heads including a stationary

member and a movable member, said members provided with cutting teeth and hair passages, at least portions of said shaving heads having cutting teeth which are laterally disposed and engage in shearing relation along a plane which is at an angle to a plane perpendicular to the longitudinal axis of the handle, the hair passages defining said laterally disposed teeth arranged to receive the hair on a bulge of the skin immediately in advance of the shaving head when the shaving device is applied against the skin, such hair entering into said laterally disposed hair passages and intersecting the said angularly disposed shearing plane, whereby an enlarged area of shaving contact between the skin and said shaving head is provided as the bulge of the skin wipes against the shaving head."

The counts originated as claims 4 and 8 in a patent reissued (Reissue No. 22,638) to Kleinman April 24, 1945, upon an application filed August 18, 1944, for the reissue of his patent 2,238,813 dated April 15, 1941, granted upon application, Serial No. 326,894, filed March 30, 1940.

The application of Steinbach, Serial No. 93,796, was filed August 1, 1936.

So, Steinbach is the senior party.

The claims which constitute the counts were copied by Steinbach into his application as claims 76 and 80 and the interference was declared, May 14, 1947.

The following historical statement is taken from the decision of the Board of Interference Examiners and here reproduced as a part of the background of the case:

"The controversy between these parties started when Steinbach copied claims from the Patent No. 2,238,813, to Kleinman. An interference was instituted. Thereafter Kleinman commenced civil action for infringement against Steinbach's assignee, Remington Rand, Inc. (Jacob L. Kleinman v. Remington Rand, Inc., U.S.D.C. So.D.N.Y., Civil 19/343). The civil action resulted in a judgment against Kleinman based on a finding that the claims in suit were unpatentable over the prior art, noting principally one Spanish patent to Giaztarro, No. 135,728. The interference

went to judgment on priority in favor of Steinbach. Kleinman appealed from the judgment of the District Court, but before it came on for hearing entered into an agreement with Remington Rand, Inc., and the court action was terminated by stipulation. The agreement included a concession of priority of Kleinman of the subject matter of the interference in favor of Steinbach—although the latter proceeding had gone to judgment five months earlier—and a very comprehensive general release by Kleinman of the Remington Rand, Inc., from legal action. Subsequent to the termination of the civil action, Kleinman filed the application for reissue of his patent, here involved, which contained a new set of claims. The oath accompanying the application for reissue set forth the belief that the court had held the patented claims not to involve invention over the prior art because they were 'too broadly and/or ambiguously and/or functionally drawn and did not define precisely the specific invention disclosed', and that the new claims defined the invention more precisely. The Examiner indicated the claims to be allowable in his first letter, but made some formal requirements. Upon compliance with the letter the application was finally allowed.

"The Steinbach application was still pending when the Kleinman Reissue Patent appeared, and some of the new claims of Kleinman, including the counts here involved, were copied in it. The Primary Examiner rejected those claims on the ground that Steinbach could not make them, but upon appeal the Board of Appeals reversed the Examiner as to the claims corresponding to the counts."

The record discloses a preliminary statement of Kleinman filed September 29, 1947, in which he alleged reduction to practice "on or about the first of May, 1934 and at various times thereafter, including the spring and early summer of 1936."

The record does not contain a preliminary statement by Steinbach and apparently no testimony was ever taken in the case.

On November 14, 1947, according to a statement in "Letter of Patent Interference Examiner, December 5, 1947," Klein-

man filed two motions to dissolve, Motion No. 1, being on the ground of estoppel and Motion No. 2 (the only one contained in the record before us), upon the ground that the counts in issue are not supported by the disclosure of the Steinbach application.

The letter of the Patent Interference Examiner reads:

"On November 14, 1947, the party Kleinman filed a motion to dissolve on the ground of estoppel (Motion No. 1) and a motion to dissolve on the ground that the counts in issue are not supported by the disclosure in the Steinbach application (Motion No. 2). The former motion is, in substance, a duplicate of the 'Petition to Commissioner for Judgment' which was filed by the party Kleinman on May 31, 1947. By the order of June 24, 1947, consideration of the Kleinman petition for Judgment was 'deferred until at least after preliminary statements have been received and approved.'

"Examination of the Kleinman motion to dissolve on the groun[d] of estoppel reveals that it is based on assertions of facts which do not appear in the Patent Office records but would require the taking of testimony to establish them. The present record is inadequate to pass upon the merits of this motion and it is therefore dismissed.

"As stated above, the party Kleinman's petition for judgment is a substantial duplicate of the motion to dissolve on the ground of estoppel which was discussed in the preceding paragraph. This petition for judgment is, of course, also based on assertions of facts which do not appear on the record and which could be established, if at all, only by the taking of testimony. Consideration of this petition for judgment is therefore deferred to final hearing.

"Kleinman's second motion to dissolve is on the ground of the party Steinbach's lack of right to make the counts in issue. It appears from the Steinbach application file that this rejection was once made by the Primary Examiner and considered by the Board of Appeals. In a decision rendered by the Board of Appeals on March 3, 1947, this rejection of claims 76 and 80 in the Steinbach application was reversed. Under such circumstances, in accordance with the decision in Janeway v. Nystrom et al., 168 Ms.D. 287 (Interference No. 81,967; Patent No. 2,352,400 granted to Nystrom et al.), consideration of the question of the party Steinbach's right to make the counts in issue is deferred to final hearing.

"On June 12, 1947, the party Steinbach filed a reply seeking judgment on the record in view of the judgment in Interference No. 79,819. Consideration of this matter is likewise deferred to final hearing. Kelling v. Peltzer, 58 U.S.P.Q. 334; Smith v. Hurd, 72 U.S.P.Q. 371.

"Since all the aforementioned matters have been dismissed or deferred to final hearing, times for taking testimony remain as set in the order of October 3, 1947."

As has been stated, no testimony was taken and the controversy passed to the jurisdiction of the Board of Interference Examiners.

Immediately after quoting the counts, the board stated that the question here presented is whether the disclosure of the senior party Steinbach supports the counts and proceeded to a comprehensive discussion of them. Its only discussion of the matter of estoppel, aside from the statement of its holding that "there is no estoppel against his [Steinbach's] assertion of the counts," reads: "The claims were presented by Kleinman after his original claims had been held invalid by the Court as unpatentable over prior art, and after certain of them were awarded to Steinbach in an interference, circumstances which would demand particular care in drafting distinguishing limitations. We do not see that there is any estoppel against Steinbach instituting proceedings to protect his award. An estoppel, if one lay, would be against Kleinman, since the parties to an interference will be presumed to have made their inventions in the chronological order in which they filed their completed application, and a junior party, as Kleinman is, is under the burden of proceeding in proper season to chal-

'lenge this record seniority and prove otherwise if he wishes to be held to be the prior inventor thereof. Whether the senior party did in fact disclose a particular subject matter must, of course, always be ascertained preliminarily to the consideration of priority."

Appellant's reasons of appeal accompanying the appeal to us make no mention of the question of estoppel, error being alleged only in the holding of the board to the effect that the counts are supported by Steinbach's disclosure.

Appellant seemingly did not have the aid of counsel in briefing the case and he himself presented all the argument on his behalf at the oral hearing before us. In addition to his initial brief he filed, by consent of the court, a reply to the brief of appellee who in turn filed a reply to appellant's reply. So, the case may be said to have been fully, or at least elaborately, briefed.

With appellant's original brief there were filed two sheets of drawings, designated as Sketches "A" and "B," reproducing, with explanatory typewritten matter, various figures of his patent drawings. In one of the figures (13) reproduced on Sketch "A," he inserted a "cutter" taken from a figure (2) of the Steinbach drawings, in order to illustrate certain of his argument.

There is, of course, no question as to the counts being fully supported by the specification and drawings of Kleinman's application. The question is whether they also are supported by the Steinbach disclosure.

■ The Board of Appeals of the United States Patent Office held that they were supported when Steinbach's application was before that tribunal for *ex parte* consideration, and the Board of Interference Examiners has held so in the *inter partes* proceeding. This court is not at liberty lightly to disregard those holdings by tribunals made up of individuals of long training and experience not only in patent law but in technical matters of structure.

It is true that in the *ex parte* proceeding the Primary Examiner seems to have rejected the claims which became the counts for lack of disclosure, but his ruling was reversed by the Board of Appeals and in the instant proceeding the Board of Interference Examiners said, as to one phase of the Primary Examiner's rejection: "The Examiner also expressed the view, in connection with count 2 (claim 80), that Steinbach did not show 'cutting teeth which are laterally disposed and engage in shearing relation along a plane', but this is clearly in error since teeth 10 of Steinbach engage teeth on stationary members 5 in a plane. This count refers to hair passages defining the laterally disposed teeth arranged so that they will receive hair on a bulge of skin, formed by the pressure and advance of the implement in shaving, such that hair entering the passages will intersect the angularly disposed cutters. It is our opinion that the lateral through slots shown at 23 in Steinbach satisfy this requirement. The efficacy of cutting of hairs on the "bulge" would, we presume, be affected by the manner of using the tool."

From our study of the Steinbach structure in the light of the specification and the explanations and arguments about it we are of opinion that the quoted holding of the Board of Interference Examiners is correct.

Immediately following the matter just quoted the board said: "*The mode of use is not in issue here.*"

We have italicized this expression because it really forms the basis of all the contentions made by appellant before us. In the beginning of his original brief it is said:

" * * * An electric razor will be useful only when it will be placed against a face to be shaved in the proper manner, that is, with the shearing face or cutting teeth positioned directly against the face to be shaved, should the electric razor be placed against the face to be shaved in a manner whereby the shearing face or cutting teeth will be positioned away from

the face to be shaved then such electric razor will not be able to perform the desired function, it will not shave, it will therefore be a useless item, the fact that the inner cutter is being moved within the stationary cutter matters in such a case very little, because the shaving face, being positioned away from the face to be shaved, can not cut the hair upon such face, the instrument would thus be a useless item as it can not perform the desired function.

"It will thus be seen that the mode of using the invention is the most important issue in this case, yet, comes the BOARD OF PATENT INTERFERENCES and states, in its decision, (page 33, line 23) that 'The mode of use is not in issue here'. It is respectfully submitted that 'the mode of use' is the most important issue in the herein appeal. It is *the mode of use* which *clearly* shows the distinction between the Steinbach disclosure and the Kleinman structure. It is the *mode of use* which clearly shows that the Steinbach tool *can not* perform the functions of the Kleinman structure. Steinbach can therefore *not make* the counts herein in issue, he is thus not entitled to make such counts." (Italics quoted.)

The thought that "the mode of using the invention is the most important issue in this case" is repeated again and again throughout the brief, the idea seeming to be that the Steinbach tool cannot be held against the face at the same angle or in the same relative position as the tool of appellant can be, and normally is, held.

To grant a patent based upon the manner in which a shaver uses a razor would be a departure from any patent law with which we are familiar.

In the original brief on behalf of Steinbach the counts are analyzed element by element and discussed in connection with the Steinbach specification and drawings.

Taking the limitation in Count 1, reading "a plurality of individual spaced apart laterally-shearing cutting units," it is pointed out that they are found in three embodiments (that is, in designated figures of the drawings) in each of which there is a clear space running longitudinally along the mid-point of the face of the device.

In respect of the limitation reading, "said stationary shearing elements provided with shearing edges disposed laterally with respect to the top face of said units" it is pointed out that the "top face" would be the upper surfaces of the shaving unit and they would tangentially engage a horizontal line or plane. Curving surfaces shown in one of the figures and flat surfaces shown in others are "disposed laterally with respect to the top face of the units."

A third limitation reads, "the movable shearing elements engaging the stationary shearing elements in cutting relation along a plane which is at an angle to the plane tangent to the tops of the units."

The Steinbach brief discusses this as follows:

"Certainly the two cutting planes 5 in Figs. 10 and 13, in cooperation with an inner reciprocating shearing element like that shown in Figs. 2, 5, 6 and 8, satisfies the limitation last quoted above which, in effect, merely says that the cutting planes are 'at an angle to the plane tangent to the tops of the units'. In Kleinman's disclosure the 'top face' of his shaving units are actual cutting surfaces, and his entire argument is based on the fallacious assumption that this added limitation must be read into Counts 1 and 2, even though their language is clearly broader and reads directly on plural spaced units where the top face of the units is not necessarily an actual cutting surface.

"That is not to say that Steinbach cannot meet the counts even if this false interpretation be placed upon it. Referring to Fig. 8 of Steinbach, the point where the numeral 5" is applied, just to the right of the legend 'Fig. 8', is a shearing zone and is at the top face of the device. The receding curved portions of the surfaces 5" which extend away from the top face of the device are 'at an angle to the plane tangent to the tops of the units'. This is a full response to the material limitations of Count 1. A similar response is found in Figs. 10 and 13."

The last limitation of Count 1 relates to the guard "extending at least in part over the movable teeth" which is shown in at least two of the figures of the Steinbach drawing.

Count 2 is broader than Count 1, as may be seen by comparing them. A limitation in Count 2 reads, "at least portions of said shaving heads having cutting teeth which are laterally disposed and engage in shearing relation along a plane which is at an angle to a plane perpendicular to the longitudinal axis of the handle."

This is shown we think in Figures 8, 10 and 13 of the Steinbach drawings.[1] Other limitations and recitals in Count 2 require no special notice. Substantially all the language of the counts other than that which we have quoted defines function, and since function does not lend patentability to a claim, it requires no particular consideration when it becomes part of a count in an interference proceeding.

In appellant's reply brief much space is devoted to a discussion of the size or dimensions of the parts, beginning with the statement: "Ordinarily, the size or dimensions of parts are not of major importance in a patent disclosure. But in the herein particular instance the dimensions of the thickness or size of parts are of great importance."

Two sheets of drawings designated respectively Sketches "C," and "D" are supplied, showing, so the brief states, the relative sizes of different parts of the respective devices, and the brief has statements regarding thickness.

It is unnecessary to discuss this contention beyond directing attention to the fact that the counts say nothing of size, thickness or other dimension nor do we find anything in the specification which would support any particular size, thickness or other dimension even if we were at liberty—which, of course, we are not—to read such limitations into the counts.

Appellant's difficulty in the case seems to grow out of his failure to understand or his unwillingness to accept as a proper statement of the law the observation of the Board of Interference Examiners embodied in the following: " * * * The mode of use is not in issue here. The counts purport to define the tool as a patentable article of manufacture. As such we look to the recited structure and the clearly defined relationships as the definition of invention and do not import limitations which might be inferred from theories of use."

The foregoing is a correct statement of law, and appellant's failure to treat it as such has led to the inclusion in his brief of a large amount of wholly irrelevant matter which tends to mystify rather than clarify.

As an example of irrelevant matter, a considerable portion of the space in appellant's original brief is devoted to the allegation that Steinbach's disclosure is anticipated by a number of prior patents. This is a matter for *ex parte* consideration in the Patent Office after the case is returned to its jurisdiction. The only question before us here is that of priority, and the matter of anticipation by prior art is not ancillary to priority.

Numerous other irrelevant contentions are made, but no good purpose would be served by repeating and discussing them in this opinion.

Determination of the ultimate issue does not depend in any way upon the angle or position at which the cutting element of the razor is applied to the face. Appellant's own specification states: "It will be seen that each hair cutting unit has a plurality of skin engaging shearing faces, as, for example, 1, 2, 3, and C, D, and E, in Fig. 5, so that the user does not necessarily have to hold the instrument at any certain, particular position with respect to the face to be shaved, and may, while shaving, move the instrument in either

---

1. We have not reproduced the drawings accompanying the specifications of the respective parties. They are numerous, and it is thought that the devices may be visualized to the extent necessary without the aid of drawings.

direction and hold the same, at his convenience, at various angles to the face and still retain contact between at least one of the shearing faces and the skin of the face to be shaved."

It is not required, of course, that in order to establish disclosure of the counts it was incumbent upon Steinbach to demonstrate that a tool constructed in conformity with his disclosure would be a "Chinese copy" of one constructed in conformity with appellant's specification and drawings, nor is a showing required that in order to obtain a satisfactory shave the Steinbach razor must be held at the same angle or in the same position as the razor of appellant.

We have most carefully studied and considered appellant's contentions, but we are not convinced of any error in the decision of the Board of Interference Examiners and it is affirmed.

Affirmed.