41 C.C.P.A.(Patents)
### MARTIN et al. v. SNYDER.
### Patent Appeal No. 6058.

United States Court of Customs and Patent Appeals.
June 30, 1954.

Charles S. Wilson, Farmingdale, L. I., N.Y. (Eugene H. Purdy, Washington, D. C., and Franz O. Ohlson, Jr., Farming-dale, L. I., N. Y., of counsel), for appellants.

Harry W. F. Glemser, Washington, D. C. (Bacon & Thomas, Washington, D. C., of counsel), for appellee.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON (retired), Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Patent Interferences of the United States Patent Office awarding priority of invention to the party Snyder upon five counts of an interference declared between Martin and Kinkaide's joint reissue application of an original patent granted June 13, 1951, on an application filed March 30, 1946, for "Construction and Mounting of Units of Transparent Snythetic Resins," and an application of Eugene H. Snyder, Serial No. 636,309, filed February 8, 1946, for "Plastic Edge Attachment."

The counts originated as claims in the Snyder application. Both parties filed preliminary statements, took testimony, filed briefs, and were represented at final hearings. The Republic Aviation Corporation is the assignee of the Martin and Kinkaide application, and the Lockheed Aircraft Corporation is the assignee of the Snyder application. .

Appellants being the junior parties, the burden was upon them to establish priority of invention by a preponderance of the evidence.

Counts 1 and 5 are illustrative and read as follows:

"1. An aircraft enclosure adapted to resist internal pressures and the edge tension forces created thereby comprising a transparent body sheet formed of a synthetic resin and having a marginal edge, and an attaching strip for mounting said enclosure which is capable of sustaining higher localized stresses than said body sheet, said attaching strip comprising cemented laminations of woven fiber and having a marginal edge which conforms to,

which overlaps, and which is cemented to the marginal edge of said body sheet, whereby to provide an extension on said body sheet to which substantially all of said tension forces are transmitted across the cemented joint connecting the overlapping marginal edges of said body sheet and strip.

"5. An aircraft enclosure adapted to resist internal pressures and the edge tension forces created thereby comprising a transparent body sheet formed of methyl methacrylate resin and having a marginal edge formed with a groove, and a strip for mounting said closure which is capable of sustaining higher localized stresses than said body sheet, said strip comprising cemented laminations of woven fiber glass and having one edge portion cemented in said groove and the other edge portion providing an extension on said body sheet to which substantially all of said tension forces are transmitted across the joint between said body sheet and strip, methyl methacrylate cement being the bonding agent both for the woven fiber glass laminations and the cemented joint connecting said body sheet and strip."

The invention relates to edge strips for domed, transparent cockpit enclosures for aircraft, and other uses, where it is necessary in high altitude aircraft to withstand internal pressures arising from comfort pressurization imposing high tensile stresses on such enclosures. These enclosures are constructed of methyl methacrylate resin, which is commonly known as Plexiglass or Lucite, having an expansion rate of about four times that of the mounting metal frame, and the problem has been to transmit and distribute said pressure and stresses from the plastic enclosures to the mounting frames and simultaneously seal the enclosures to retain the positive internal pressure.

The party Snyder proposes to provide a canopy edge strip attachment of cemented laminations of woven fiber, or woven fiber glass laminations, which are cemented or cast to the edge of the plastic enclosure and which provide high marginal strength, through which attaching bolts may be suitably inserted. It is claimed that a fiber glass laminate approximately the thickness of the canopy enclosure is found capable of developing a high efficiency and of sustaining high stresses and results in the elimination of rubber grommets and metal bushings.

The reissue application of Martin and Kinkaide discloses a somewhat similar structure except that they describe their laminations as consisting of "metallic wire mesh or screen," and one embodiment calls for "cloth or woven fabric laminations."

The Board of Patent Interferences found that the junior parties, Martin and Kinkaide, had proven conception of the invention defined by the five counts on February 9, 1945 as to counts 1, 2, 3, and 4, and on February 14, 1945, as to count 5, and that Snyder had established conception of the invention defined in counts 1, 2, and 3, on February 17, 1945, and of the invention defined in counts 4 and 5 in June 1945.

The board held, however, that appellants' activities from the end of the summer of 1945 until their filing date on March 30, 1946, did not constitute diligence in that their use of woven wire did not respond to the counts. Previous to the time of employing metal wire mesh, i. e., from January 1945 until the end of the summer of 1945, appellants had constructed joints employing cotton duck laminate and fiber glass but abandoned it, at the aforestated time, for the use of metal wire mesh. Thereafter all tests conducted by them employed metal wire mesh as the reinforcing agent.

Conception of invention as of February 9 and 14, 1945, was awarded the junior parties by the board on the basis of the materials forming the structures which were made during the period from February through the summer of 1945. The board held, however, that inasmuch as the tests of those structures were limited to "panel" or "pressure

box" tests, and the single flight test results not being corroborated by competent evidence, appellants had failed to prove a reduction to practice of the invention as defined by the counts. Konet v. Haskins, 179 F.2d 1003, 37 C.C.P.A., Patents, 913.

The decision of the board reflects that every material phase of this litigation has been carefully considered and dealt with.

In our opinion it is clear that the holding of the board that the appellants were subsequent to the appellee in reducing the invention to practice, and were also lacking in diligence during the critical period, must be affirmed unless it can be held that "wire mesh" corresponds to the term "woven fiber" or "woven fiber glass." Accordingly, we do not deem it necessary to lengthen this opinion with a detailed review of the record although it has received careful study by us in arriving at an agreement with the holding of the board.

Here, the brief of appellants is replete with various dictionary and publication excerpts seeking to establish that the term "woven wire" fully meets the limitations of "woven fiber" and "woven fiber glass" appearing in counts 1, 3, 4, and 2 and 5, respectively. We have given careful consideration to those definitions but are not convinced that the board erred in holding that the term "woven wire" fails to meet the limitations of the counts.

Also, in their brief, appellants cite and discuss fourteen issued patents in support of their contentions relative to certain dictionary terms. This court is bound by statute to hear and determine appeals on evidence produced before the Patent Office, and we may not consider matters of evidence appearing in a counsel's brief which do not appear in the record before us. In re Spohn, 77 F.2d 768, 22 C.C.P.A., Patents, 1304.

Counsel for appellants contend as to counts 1, 3, and 4, that in broadly reciting "woven fiber," any fiber capable of being woven such a "metal (wire), glass, asbestos, linen, ramie, cellulose, nylon, cotton," would respond to the language of those counts. This court has stated that "It is elementary that in interference proceedings counts are to be given the broadest construction of which they are reasonably capable, but limitations expressed in the counts may not be disregarded." Dawson v. Martin, 111 F.2d 300, 303, 27 C.C.P.A., Patents, 1155, and that the doctrine of equivalency does not apply in interference proceedings. Potts v. Kimball, 134 F.2d 327, 30 C.C.P.A., Patents, 847. Appellants also contend that "woven fiber" is identical with "woven wire" and that the only important or critical characteristic in the applications of the parties is that the reinforcing fabric be such as can be impregnated with the acrylic resin.

Counsel for appellants contend as to counts 2 and 5, which recite as a limitation "woven fiber glass" as the reinforcing fabric of the mounting strip; that "woven fiber glass" and "woven wire" are structurally identical and the same thing; that the words "woven fiber glass" refer to any woven fabric regardless of the material of the fibers woven into the fabric; and that since the words "fiber glass" appear only in counts 2 and 5, they are not critical or important.

In contradiction to the contentions of appellant's counsel, the record discloses that the party Martin testified on cross-examination as follows:

"XQ62. Mr. Martin, you testified that wire mesh is a fabric, did you not? A. I consider it as such.

"XQ63. Would you say that wire mesh is a woven fabric? A. I would say that it is a woven fabric.

"XQ64. But not a woven fiber? A. Not a woven fiber, no.

"XQ65. Would you say that wire mesh is a fiber-glass? A. Definitely not."

We think that testimony by the party Martin that wire mesh is not a woven fiber nor is it fiber glass, supports the holding of the board that con-

structions employing wire mesh do not respond to the limitations in the counts calling for "woven fiber" and "fiber glass," and that the doctrine of equivalents cannot apply. Potts v. Kimball, supra. We, therefore, affirm the holding of the board that appellants had not established a reduction to practice prior to the filing date of their application, March 30, 1946, and were not diligent in reducing the invention to practice.

 There is no evidence of record that the party Snyder actually reduced his invention to practice prior to his filing date, February 8, 1946, inasmuch as it was not tested under flying conditions. However, since Snyder is the senior party, and since the appellants, although first to conceive, were the last to reduce to practice and did not exercise reasonable diligence from the time when Snyder entered the field until the appellants effected a constructive reduction to practice by filing their application, Snyder must prevail.

We find no error in the decision of the Board of Patent Interferences and its decision is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate herein in place of GARRETT, Chief Judge.