**Gilbert CORREGE, Eugene Dominique, and Danilo Ciprian, Appellants,**

v.

**Dennis E. MURPHY, Appellee.**

**Appeal No. 83–509.
Interference No. 99,721.**

United States Court of Appeals,
Federal Circuit.

April 20, 1983.

William D. Stokes, Alexandria, Va., argued for appellants.

Charles L. Gholz, Arlington, Va., argued for appellee.

George W. Finch, Long Beach, Cal., of counsel.

Before MARKEY, Chief Judge, and FRIEDMAN and NICHOLS, Circuit Judges.

MARKEY, Chief Judge.

The decision of the Board of Patent Interferences awarding priority to the junior party Dennis ·E. Murphy (Murphy), is *affirmed.*

### Background

Murphy, an employee of McDonnell Douglas Corp., was working in 1974 to solve an explosive decompression problem in DC–10 aircraft. Separation of the cargo door at altitude caused the aft cargo compartment below the main cabin to decompress. Differential pressure across the main cabin floor caused failure of the floor structure and control cables.

In May of 1974, Murphy conceived a sidewall vent to allow rapid decompression of the main cabin. A prototype was built and tested in July of 1974, employing a small scale test facility and simulating the pressure and airflow environment of the main cabin floor. A written description of the vent (disclosure R–6033) was received in the McDonnell Douglas Patent Department on July 15, 1974. Although the vent had worked well during the July testing, concern over its dislodgement by pencils dropped through the grill and its unseating when liquids had been spilled on it caused inactivation of the R–6033 disclosure on August 1, 1974.

In August 1974, Murphy conceived another embodiment. The following month, prototypes were built and successfully tested in the small scale test facility and in a DC–10 fuselage, the latter containing anthropomorphic dummies in the seats and briefcases, newspapers, and hats located throughout the cabin.

A written description of the second embodiment (disclosure R–6095) was received in the McDonnell Douglas Patent Depart-

ment on October 10, 1974. That disclosure formed the basis of the patent application filed December 17, 1975, that eventually matured into U.S. Patent 4,033,247 granted July 5, 1977.

At an April 10, 1975 meeting, McDonnell Douglas disclosed and offered to sell its sidewall venting system to various airline and air transportation organizations. A proprietary warning appeared on a sales brochure distributed with other materials at the meeting.[1] On April 11, Gilbert Correge et al. (Correge) filed a French patent application claiming the invention of the count.[2] Correge filed an application for a U.S. patent on April 7, 1976, claiming the priority date of the French application.

On September 23, 1976, Dorris Brandon (Brandon) filed a patent application claiming the invention of the count. An interference was declared on August 10, 1977, between Correge, Brandon and Bernard Jorgenson (Jorgenson) who had filed a patent application on May 13, 1975. Murphy filed a Reissue Application of his '247 patent on November 7, 1977, submitting claims of a breadth sufficient to encompass both embodiments (disclosure R–6033). Murphy was added on July 25, 1978, to the interference.

Brandon filed motions to dissolve the interference on December 6, 1977 and November 20, 1978. Both were denied by the primary examiner.

On August 1, 1980, the interference was terminated as to Brandon and Jorgenson, leaving only Correge and Murphy. In the Board's decision on the interference, dated May 25, 1982, it determined that the July 1974 testing of the vent described in disclosure R–6033 was not a reduction to practice of the invention of the count and that deactivation of the R–6033 disclosure was not therefore an abandonment. The full scale September 1974 testing described in disclosure R–6095 was held a reduction to practice, and sufficient activity was found from that date until Murphy's December 17, 1975 filing date to rebut an inference of abandonment, suppression or concealment. Because patentability is not ancillary to priority, the Board did not decide whether Murphy had lost a right to patent on the subject matter of the count.

*Issues*

1) Whether the Board correctly determined that inactivation of the R–6033 disclosure was not an abandonment.

2) Whether there was sufficient evidence to rebut an inference that the invention was abandoned, suppressed, or concealed.

3) Whether the Board properly refused to rule on patentability of the count.

OPINION

1. *Inactivation of the R–6033 Disclosure*

In seeking to rely on the August 1, 1974 inactivation as evidencing intent to abandon the invention, Correge must establish that the July 1974 testing was an actual reduction to practice. "[W]ithout an actual reduction to practice there is no invention in existence which can be abandoned. . . ." *Peeler v. Miller,* 535 F.2d 647, 651, 190 USPQ 117, 120 (Cust. & Pat.App.1976).

---

1. The proprietary warning provides: "McDonnell Douglas Corporation proprietary rights are included in the information disclosed herein. Recipient by accepting this document agrees that neither this document nor the information disclosed herein nor any part thereof shall be reproduced or transferred to other documents or used or disclosed to others for manufacturing or for any other purpose except as specifically authorized in writing by McDonnell Douglas Corporation."

2. The single count of the interference reads: An aircraft of which the structure comprises: a passenger cabin; at least one normally pressurized luggage compartment; a longitudinal floor separating said passenger cabin from said luggage compartment; openings formed in the peripheria [sic] of said floor, for communicating said cabin and said luggage compartment; and ventilation devices disposed on the cabin side of said floor and at least partially concealing said openings, said ventilation devices movably mounted with respect to said openings for enabling spontaneous clearing of said openings responsive to a sudden decompression in said luggage compartment.

■ The physical embodiment relied upon as an actual reduction to practice of the invention in interference must include every essential limitation of the count. *Fredkin v. Irasek,* 397 F.2d 342, 347, 55 CCPA 1302, 158 USPQ 280, 285 (Cust. & Pat.App.1968), *cert. denied,* 393 U.S. 980, 89 S.Ct. 450, 21 L.Ed.2d 441, 159 USPQ 799 (1968); 1 Rivise & Caesar, Interference Law and Practice, 412 (1940). Though the July 1974 tests involved a full scale vent subjected to a differential pressure, the count, *supra* note 2, is directed to an airplane having a passenger cabin, a luggage compartment, an intervening floor with openings, and ventilation devices. The Board correctly concluded that it wasn't until the September 1974 tests in the body of a DC–10 that reduction to practice of the invention of the count took place. Inactivation of the R–6033 disclosure cannot therefore be relied upon as evidence of an intent to abandon.

### 2. *Abandoned, Suppressed or Concealed*[3]

Correge argues that the time between Murphy's July, 1974 alleged reduction to practice and his December, 1975 filing date, a period of some 17 months, constituted unreasonable delay sufficient to create an inference of intent to abandon.[4]

■ Murphy counters that the time should be measured from his September 1974 reduction to practice to his first public disclosure on April 10, 1975, a period of seven months. Though the period of interest is that between reduction to practice (here September 1974) and the application filing date, activities occurring within that period may and must be looked to in determining the question of abandonment.

It is undisputed that the April 10, 1975 disclosure was that of the invention of the count. Correge argues that no public disclosure occurred because a proprietary warning, *supra* note 1, appeared in the brochure distributed at the meeting. The argument is without merit.

■ The non-existence, as well as the existence, of a secrecy agreement can be implied from the circumstances surrounding a disclosure and the relationship of the parties; such an agreement is not automatically created by the unilateral acts of one party. *Radioptics, Inc. v. United States,* 621 F.2d 1113, 1121, 223 Ct.Cl. 594, 608 (1980); *see, Kamin v. Kuhnau,* 135 USPQ 133, 138 (Or.1962). Information was here disclosed at a meeting attended by forty-five persons representing twenty-six airlines (a majority of the foreign and domestic DC–10 operators) and the Air Transportation Association. Foreign airlines represented included Swissair, Sabena Belgian World Airlines, Korean Airlines, Air New Zealand, Royal Dutch, Alitalia, Union de Transports Aeriens and others. Virtually the only section of the relevant public absent from that meeting were Lockheed and Boeing, McDonnell Douglas' major competitors.[5] At the meeting, McDonnell Douglas

---

**3.** Section 102(g) provides:

A person shall be entitled to a patent unless—

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

**4.** Correge also draws our attention to delay between July 1974 and filing of the Reissue Application on November 1977 seeking enlargement of claims. Correge has not argued and there is no evidence to support the position

that the broadened claims were not supported by the application as originally filed. In light of the sufficiency of the disclosure, Correge can not raise any so-called "late claiming" issue. *Westphal v. Fawzi,* 666 F.2d 575, 212 USPQ 321, 323 (Cust. & Pat.App.1981).

**5.** There is testimony that Lockheed and Boeing found out about the April 10, 1975 meeting and learned the information. Those companies were the assignees, respectively, of the Jorgenson and Brandon applications. McDonnell Douglas disclosed the information to them within a few days following the April 10 meeting. Boeing and Lockheed's representatives were, unlike the attendees of the April 10 meet-

offered to sell its sidewall venting system to the various airlines as a retrofit. No steps were taken by McDonnell Douglas at the meeting to keep the invention a "secret." No mention was made during the meeting that the information was to be kept secret, and no oral warnings were stated. Thus, the proprietary warning in the brochures was at most a notice that McDonnell Douglas was not giving up ownership of the disclosed information, not unlike the position taken by applicants on filing applications for patents. A mere assertion of ownership can not convert what was in fact a public disclosure and offer to sell to numerous potential customers into a non-disclosure. Given the large number at the meeting, the offer to sell, and the absence of any effort to create an atmosphere wherein the recipients would be led to believe that they were receiving "secret" information,[6] we hold that the April 10, 1975 meeting was a public disclosure of the invention of the count.[7]

■ Having made a public disclosure of the invention of the count within seven months, and filed a patent application within eight months thereafter, Murphy satisfied the public policy requirement of early public disclosure underlying the patent system. *Horwath v. Lee,* 564 F.2d 948, 950, 195 USPQ 701, 703 (Cust. & Pat.App.1977). The time between Murphy's public disclosure and his filing of a patent application was well within the one year grace period provided by 35 U.S.C. § 102(b).[8]

■ The only question left to resolve is whether the seven month period between Murphy's reduction to practice and his public disclosure was an excessive delay sufficient to raise the presumption of an intent to abandon.

"The courts have consistently held that an invention, though completed, is deemed abandoned, suppressed, or concealed if, within a reasonable time after completion, no steps are taken to make the invention publicly known. Thus, failure to file a patent application; to describe the invention in a publicly disseminated document; or to use the invention publicly, have been held to constitute abandonment, suppression or concealment."

*International Glass Co. v. United States,* 408 F.2d 395, 403, 159 USPQ 434, 441 (Ct.Cl. 1968) (citations omitted); *Farmhand, Inc. v. Lahman Mfg. Co.,* 192 USPQ 749, 757 (D.S. D.1976), *aff'd,* 196 USPQ 597 (8th Cir.1978). No authority has held that a seven month period is *per se* unreasonable between reduction to practice and making the invention publicly known. Nor has that period been seen as raising a presumption. *See Young v. Dworkin,* 489 F.2d 1277, 180 USPQ 388 (Cust. & Pat.App.1974) (Delay of over two years); *Peeler v. Miller,* 535 F.2d 647, 190 USPQ 117 (Cust. & Pat.App.1976) (four years); *Shindelar v. Holdeman,* 207 USPQ 112 (CCPA 1980), *cert. denied,* 210 USPQ 776 (1981) (twenty-nine months). We need not and do not here decide whether a seven month period might under some circumstances be sufficient to raise a presumption of abandonment, for if there were such a presumption, there is sufficient evidence of diligence in the present record to rebut it.

The record establishes that on September 17, 1974, Murphy signed an Employee Disclosure Record which was received in the

---

ing, required to execute a proprietary information agreement when the information was disclosed to them.

**6.** That such atmosphere was absent may account for reception of the brochure by McDonnell Douglas' competitors within a few days of the meeting.

**7.** Had Murphy filed his application more than one year after the April 10, 1975 meeting, he would on this record have an insurmountable

task in attempting to prove that meeting not a bar under 35 U.S.C. § 102(b), *infra* note 8.

**8.** 35 U.S.C. § 102(b) provides:

A person shall be entitled to a patent unless—

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . .

Patent Department on October 10, 1974. The invention was evaluated for patenting on November 7, 1974. Five days later, a patent search was approved. Murphy responded to the search results on January 27, 1975. On February 6, 1975, the filing of a patent application was authorized. Two months later, on April 10, the invention was publicly disclosed. On this record, we hold that there was sufficient disclosure-directed activity during the seven months between reduction to practice and first public disclosure to rebut any inference, if inference there were, of abandonment.

### 3. *Patentability of the Count*

Correge argued before the Board that Murphy had lost the right to patent the subject matter of the count because the invention was described in a printed publication[9] more than one year before his filing date. 35 U.S.C. § 102(b), *supra* note 8. The Board dismissed that argument because patentability of the count is not ancillary to priority, citing *Kahn v. Phipard,* 397 F.2d 995, 55 CCPA 1284, 158 USPQ 269 (Cust. & Pat.App.1968) and *Kleinman v. Steinbach,* 187 F.2d 743, 38 CCPA 924, 89 USPQ 151 (Cust. & Pat.App.1951).

■ Correge renews the argument before this court in a different guise, insisting that the Board erred in not rendering a decision on the merits of Brandon's Motions to Dissolve, which were based on unpatentability of the count in light of the same printed publication. Having neither joined in the Brandon motions nor filed his own, Correge has no standing to contest the Board's treatment of Brandon's motions.

### Conclusion

We hold that Murphy reduced the invention of the count to practice in September of 1974, that he publicly disclosed the invention on April 10, 1975, that there is sufficient evidence of diligence during the intervening seven months to rebut any inference of intent to abandon, suppress, or conceal, and that Correge has no standing to challenge the Board's refusal to review dismissal of Brandon's Motions to Dissolve. Accordingly, the decision of the Board is *affirmed.*

*AFFIRMED.*

**9.** A November 4, 1974 article in *Aviation Week & Space Technology.*