John M. TASKETT, Appellant,

v.

Dale H. DENTLINGER, Appellee.

No. 03–1151.

(Interface No. 103,894).

United States Court of Appeals,
Federal Circuit.

DECIDED: Sept. 26, 2003.

Sid Leach, Snell & Wilmer, L.L.P., of Phoenix, AZ, argued for appellant. Of counsel were Thomas J. Finn and Michael K. Kelly.

David G. Wille, Baker Botts L.L.P., of Dallas, TX, argued for appellee. With him on the brief were Jeffrey D. Baxter and Charles S. Fish.

Before MICHEL, DYK, and PROST, Circuit Judges.

MICHEL, Circuit Judge.

John M. Taskett appeals from the decision of the United States Patent and Trademark Office, Board of Patent Appeals and Interferences ("Board") awarding priority to junior party, Dale H. Dentlinger. *Dentlinger v. Taskett*, Patent Interference No. 103,894, slip op. (Bd. Pat.App. & Int. Aug. 28, 2002). Because the Board correctly concluded that Dentlinger had proven reduction to practice of the invention claimed in the count before Taskett's filing date, we affirm.

**Background**

Taskett filed his patent application on June 1, 1995 and Dentlinger filed his on June 7, 1995. The Board declared an interference between the two applications on July 9, 1997. The interference involves a single count covering a process for the automated purchasing of prepaid telephone services.[1] Because of the filing dates, Taskett was designated the senior party. Ultimately, however, the Board concluded that Dentlinger was entitled to priority because Dentlinger showed that

---

1. The single count of the interference stated:
   A method for automated purchase of prepaid telephone services, comprising the steps of:
   receiving, at an initiating terminal, input of a request to purchase a specified amount of telephone services;
   obtaining financial authorization for said request by a central terminal;
   transmitting data, by said central terminal, to said initiating terminal to be printed on a receipt;
   printing, by said initiating terminal, of said receipt reflecting purchase of prepaid telephone services to be used instead of a telephone card to obtain telephone service up to said specified amount.

he was the first to reduce to practice the subject matter of the count.[2]

The Board's acceptance of Dentlinger's assertion that he conceived the invention no later than July 15, 1994 is not contested. Taskett contests the Board's conclusion that Dentlinger's reduction to practice occurred no later than October 11, 1994, arguing that the October 11, 1994 test was not sufficiently complete. The Board disagreed for two reasons. First, the Board explained that it concluded that the October 11, 1994 test achieved reduction to practice because, in contrast to what Taskett argued, Dentlinger was not required by the count to obtain actual "financial authorization" from a third-party institution; the Board found that the use of a switch at EDS (Dentlinger's employer) and a dummy account could satisfy the count. *Dentlinger*, Patent Interference No. 103,894, slip op. at 11–13. Second, the Board concluded that the testimony of two of Dentlinger's employees,[3] and the test receipt dated October 11, 1994, showed by a preponderance of the evidence that Dentlinger had reduced the invention to practice by October 11, 1994. *Id.*

Taskett had also filed a motion to strike witness Rhonda Landa's re-direct testimony on the ground that the scope of the re-direct examination exceeded that of the cross-examination. The Board denied Taskett's motion. The Board explained that even if it exceeded the scope of cross examination, the re-direct examination was proper because its purpose was "to bring out omitted facts and circumstances concerning the invention." *Id.* at 8.

Taskett maintains that Dentlinger's October 11, 1994 test failed to perform a process that met all of the limitations of the count and that Dentlinger failed to prove adequate testing to show that the process actually worked for its intended purpose. Taskett appeals to this court, arguing that the Board erred in concluding that Dentlinger deserved priority because Dentlinger did not prove he successfully reduced the invention of the count to practice before Taskett's filing date. Taskett specifically identifies the "financial authorization" limitation, and the descriptions of the printed receipt as reflecting "purchase" of "prepaid telephone services," as not performed by the October 11, 1994 test. Taskett essentially argues that the count can only be fulfilled if real money, from a real bank account at a third-party financial institution is actually debited and actual telephone calls are made based on the printed receipt.

Taskett also appeals the denial of his motion to strike Rhonda Landa's re-direct testimony.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

**Discussion**

■■■ "Priority and its issues of conception and reduction to practice are questions of law predicated on subsidiary factual findings." *Brown v. Barbacid*, 276 F.3d 1327, 1332 (Fed.Cir.2002) (citation omitted). "Accordingly, this court reviews without deference the Board's legal conclusions on ... reduction to practice, and reviews for substantial evidence the

---

**2.** Taskett argues no priority date other than his filing date, i.e., he asserts constructive reduction to practice only as of June 1, 1995.

**3.** The Board particularly relied on the testimony of one witness, Rhonda Landa, who explained on re-direct examination the exact

actions taken in the October 11, 1994 test. Rhonda Landa also identified the receipt entered into evidence, also relied on by the Board, as the receipt created in the October 11, 1994 test.

Board's factual findings." *Id.* (citations omitted).

### I.

■ "In order to establish an actual reduction to practice, the inventor must prove that: (1) he constructed an embodiment or performed a process that met all the limitations of the interference count; and (2) he determined that the invention would work for its intended purpose." *Cooper v. Goldfarb,* 154 F.3d 1321, 1327 (Fed.Cir.1998).

### A.

■ To satisfy the first requirement of the test for reduction to practice, Dentlinger must prove that he practiced every limitation of the count. *See, e.g., Eaton v. Evans,* 204 F.3d 1094, 1097 (Fed.Cir.2000). In this regard, Taskett argues that the October 11, 1994 test did not meet every limitation of the count because the test did not seek either "financial authorization" or authorization from a *third-party* financial institution, but rather received authorization based on a dummy checking account at EDS itself. According to Taskett, the "financial authorization" limitation in the count requires communication with and approval from an actual third-party financial institution holding actual money in an actual account. The Board found to the contrary, and we agree.

Although it is true that in many commercial applications "financial authorization" will be obtained from a third-party financial institution, the count, we conclude, does not so require. The language of the count is simply: "obtaining financial authorization for said request by a central terminal." Nothing in the count, read on its face or in light of either or both specifications, requires that the "central terminal" be located at a third-party financial institution.

According to Taskett, interpretation of the term "financial authorization" must be limited by the specification. Though it is true that we must read a claim in light of the specification, rarely will we limit the claim to the preferred embodiments described in that specification. *Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313, 1325 (Fed.Cir.2003) ("Because the claims are best understood in light of the specification of which they are a part, however, courts must take extreme care when ascertaining the proper scope of the claims, lest they simultaneously import into the claims limitations that were unintended by the patentee."). This is not such a case. Nothing in the specifications suggests that "central terminal" means a central computer at a third party institution.

Specifically, in the Summary of the Invention, Dentlinger's application describes one of its objects as providing a system and method for "electronically debiting a designated account," and does not limit the "designated account" to one at a third-party financial institution. Even where the specification does suggest that authorization be obtained from a third-party financial institution, the discussion is limited to the preferred embodiments. The specification makes clear, however, that the claims are not limited to those embodiments. For example, the specification states "there are numerous known ways for obtaining authorization, any of which are compatible with the system and method of the present invention," and that "the present description is provided only by way of illustrative example ... [and] [n]umerous modifications and alternate embodiments of the invention will occur to those skilled in the art." To require "financial authorization" from a third-party financial institution would be to impermissibly import limitations from the specification into

the claims. Accordingly, we hold that "financial authorization" does not require approval from a third-party financial institution.

In addition, we discern substantial evidence supporting the Board's finding that the "authorization" requirement was met. Taskett does not dispute that the October 11, 1994 test obtained approval from a sample checking account using the EDS switch. During the October 11, 1994 test, the "initiating terminal," an ATM device, received a request to purchase a specified amount of prepaid telephone service. The ATM device communicated with the EDS switch, which operated as the "central terminal." The EDS switch checked the amount of available "funds" in a sample checking account to ascertain whether there were sufficient funds for the prepaid telephone services. Upon confirming sufficient funds, fifty dollars was withdrawn from the sample checking account. A printed receipt reflected this withdrawal and provided a call-in number and PIN. Thus, "financial authorization" was provided by the central terminal to the ATM upon receiving a request for the purchase of prepaid telephone services. Though the funds in the sample checking account were not real, the "financial authorization" was.[4]

Because the count does not require actual authorization from a third party and because "authorization" was received for the sample checking account here, we agree that all limitations of the count were met in the October 11, 1994 test.[5]

### B.

As for Taskett's argument that Dentlinger did not prove reduction to practice because he did not show that he "determined that the invention would work for its intended purpose," *Cooper,* 154 F.3d at 1327, we agree with the Board that to meet this requirement, the test need not occur under conditions of actual, commercial use. *See Scott v. Finney,* 34 F.3d 1058, 1063 (Fed.Cir.1994) ("In tests showing the invention's solution of a problem, the courts have not required commercial perfection nor absolute replication of the circumstances of the invention's ultimate use.... [Although,] more scrupulous testing [is prescribed] under circumstances approaching actual use when the problem includes many uncertainties.").[6]

Courts have found testing sufficient to prove that the invention is suitable for its intended use in situations similar to the one here. For instance, in *Williams v. Adm'r of NASA,* 59 C.C.P.A. 1329, 463 F.2d 1391 (1972), this court's predecessor court held that laboratory testing of an invention intended for attitude control of a yet-to-be-launched communications satel-

---

4. There is nothing in the count that requires that there be actual money in the account. In fact, such a requirement would preclude the purchase of prepaid telephone services on credit, a mechanism specifically contemplated in the specification.

5. To the extent Taskett argues that *Eaton* and *Newkirk v. Lulejian* require a different result, we disagree. In *Eaton,* this court stated that "this Court's well-established precedent requires that the constructed embodiment or performed process include the precise elements in the count." *Eaton,* 204 F.3d at 1097. In *Newkirk,* this court held that "every

limitation of the interference count must exist in the embodiment and be shown to have performed as intended." *Newkirk v. Lulejian,* 825 F.2d 1581, 1582 (Fed.Cir.1987). Here, every limitation of the count was performed by October 11, 1994, and the standards set forth in *Eaton* and *Newkirk* are met.

6. Nothing in *Eaton* or *Newkirk* is to the contrary. In fact, *Eaton* makes clear that the holding in *Scott* relates to the second requirement for showing reduction to practice, and that *Eaton* relates to the first, and distinct, requirement. *Eaton,* 204 F.3d at 1098.

lite was sufficient. The court found nothing in the record that would "raise significant doubts" that the system tested in the laboratory would be operative when used with the communications satellite. *Id.* at 1399. Thus, it found the simulation adequate. Similarly, in *Scott,* this court held that the second requirement for a showing of reduction to practice did not mandate testing of a prosthetic penile implant device under conditions of actual use. *Scott,* 34 F.3d at 1063. The court found that prior art prosthetic devices had "fully tested the workability of most features" of the invention and that subsequent testing need only show the workability of the *new* features of the claimed invention. *Id.*

Here, there is substantial evidence that the "obtaining financial authorization" limitation of the count was well-known, well-tested, and even commercialized in the fields of credit cards and banking. We also discern substantial evidence that the printed receipt shows the process would in fact work for making telephone calls. Rhonda Landa's testimony, corroborated in part by the testimony of Kathleen Davis, and the receipt dated October 11, 1994, provided direct and ample evidentiary support for the Board's finding. *Dentlinger,* Patent Interference No. 103,894, slip op. at 12. That Dentlinger did not test this step of the count under conditions of actual use does not mean that he did not reduce it to practice. His test was sufficient to determine that the invention would work for its intended purpose. To hold otherwise would be to require an inventor to have created a viable commercial embodiment before the Board or a court could find reduction to practice. This the law does not require. *See Scott,* 34 F.3d at 1061–63; *Mattor v. Coolegem,* 530 F.2d 1391, 1395 (CCPA 1976) ("Although, as Coolegem asserts, there is no indication that the OPC's made and tested were capable of being commercially exploited

without further refinement, this is not necessary for a reduction to practice of the count."); *Barmag Barmer Maschinenfabrik AG v. Murata Mach. Ltd.,* 731 F.2d 831, 838 (Fed.Cir.1984) ("On the other hand, 'there is no requirement for a reduction to practice that the invention, when tested, be in a commercially satisfactory stage of development.'") (citation omitted).

Because there was at least substantial evidence supporting the Board's conclusion and the Board's analysis was free of legal error, we hold the process invention of the count was reduced to practice on October 11, 1994.

## II.

Dentlinger maintains that Taskett waived a number of the arguments he presents on appeal by not raising them below. As we have already explained, Taskett loses on the lack of merit of all of the arguments he presents. Having already rejected them, it is unnecessary for us to decide whether Taskett waived any of those arguments. Moreover, because the arguments for waiver are not very strong and the rebuttal arguments are powerful, the substantive arguments form a more appropriate basis for our decision. We, therefore, decline to reach the waiver issues.

## III.

Dentlinger argues in the alternative that he is entitled to priority because he was diligent in his efforts at reduction to practice up until the filing of his application. The Board did not reach the question of Dentlinger's diligence because of its conclusion that Dentlinger reduced his invention to practice before Taskett's filing date. Because we affirm the Board's decision on the same basis, we also need not reach this argument.

## IV.

 With respect to Taskett's appeal of the denial of his motion to strike portions of the re-direct testimony of Rhonda Landa, we conclude that the Board did not abuse its discretion. The Board has ample authority and discretion to admit relevant testimony of the kind given by Landa. We think it unclear that anything Landa said on re-direct was, as argued, beyond the scope of the cross-examination. But even if it were, it was entirely appropriate for the Board to admit it anyway in order to clarify facts that were not made sufficiently clear by either cross examination or direct examination, as the Federal Rules of Evidence, and thus the Board's rules, so permit. *See* 37 C.F.R. § 1.671(b); Fed. R.Evid. 611(b).

### Conclusion

We conclude that the Board was correct in determining the count did not require actual financial authorization from a third-party financial institution. We also observe substantial evidence supporting both the Board's finding that all steps of the count were performed by October 11, 1994 and its finding that, on that date, Dentlinger proved he duly determined that his process would work for its intended purpose. Both findings were reached by a process that was in accordance with law. We hold, therefore, that the Board correctly concluded Dentlinger was the first to reduce to practice the process invention of the count. As priority was correctly awarded to Dentlinger, we

*AFFIRM.*