NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IDEAL INNOVATIONS, INC., RIGHT PROBLEM, LLC, ROBERT KOCHER,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, OSHKOSH CORPORATION, GENERAL DYNAMICS LAND SYSTEMS, INC., FORCE PROTECTION, INC., GENERAL DYNAMICS LAND SYSTEMS - FORCE PROTECTION, INC.,**
*Defendants-Appellees*

---

2020-2065

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00889-EJD, Senior Judge Edward J. Damich.

---

Decided:  December 3, 2021

---

AHMED JAMAL DAVIS, Fish & Richardson P.C., Washington, DC, argued for plaintiffs-appellants.  Also represented by ROBERT ANDREW SCHWENTKER, JACK WILSON.

ALEX HANNA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington,

DC, argued for defendant-appellee United States. Also represented by SCOTT DAVID BOLDEN, BRIAN M. BOYNTON, GARY LEE HAUSKEN, RACHEL HICKS, LEE PERLA.

SALVATORE P. TAMBURO, Blank Rome LLP, Washington, DC, argued for defendant-appellee Oshkosh Corporation. Also represented by MEGAN R. WOOD.

HOLMES J. HAWKINS, III, King & Spalding, LLP, Atlanta, GA, for defendants-appellees General Dynamics Land Systems, Inc., Force Protection, Inc., General Dynamics Land Systems - Force Protection, Inc. Also represented by BRITTON F. DAVIS, Denver, CO.

––––––––––––––––––––

Before REYNA, HUGHES, and STOLL, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* REYNA.

Concurring opinion filed by *Circuit Judge* HUGHES.

REYNA, *Circuit Judge*.

Ideal Innovations, Inc., Right Problem, LLC, and Robert Kocher appeal a grant of summary judgment by the United States Court of Federal Claims that resulted in dismissal of their action. On appeal, Appellants argue that the trial court, in reaching its summary judgment conclusion, failed to consider all the evidence related to testing of the invention. We conclude that the issue of testing is a genuine issue of material fact, and, therefore, summary judgment is inappropriate. We reverse and remand for further proceedings.

BACKGROUND

History of the Invention

The patents at issue are U.S. Patent Nos. 8,365,648 and 8,651,008 (the "'648 Patent" and "'008 Patent", respectively). Both stem from U.S. Provisional Application

No. 60/708,771 (filed Aug. 17, 2005) and U.S. Application No. 11/507,089 (filed Aug. 21, 2006). They share the same title, "Highly survivable urban utility vehicle (HSUUV)," the same specification, and the same inventor, Appellant Robert Kocher, who is the president and chief executive officer of Appellants Ideal Innovations, Inc. ("I-3") and Right Problem, LLC. *See* J.A. 58–59, 90–106.

Kocher began developing the invention in early 2005. J.A. 2817. At the time the applications for the underlying patents were filed, there existed a need for improved armored vehicles that could protect occupants from armor-piercing munitions—namely, explosively formed projectiles ("EFPs"). *Id.* The patents relevant to this appeal generally addressed that need in disclosing a wheeled armored vehicle system with heavy armor installed only in specific areas that receive the greatest ballistic threat. *See, e.g.*, J.A. 98 (claim 1 of the '648 Patent). Configuring armor in this manner protects vehicle occupants from harm, even from EFPs, while maintaining the vehicle's mobility by keeping weight down. J.A. 97–98 ("The [invention] provides a novel way to balance the concerns of armor, mobility and cost.").

In January 2006, Kocher approached the Army's Rapid Equipping Force ("REF") with a proposal to implement his armor configuration on a commercially available vehicle chassis. J.A. 62. On March 10, 2006, Kocher conducted a test fire on sample armor kits (a.k.a. coupons), which involved firing EFPs at a configuration of armor kits to test whether the armor could withstand the attacks. J.A. 2823. The test showed that some armor could withstand EFP attacks. *Id.* On August 28, 2006, REF awarded Kocher a contract ("REF Contract") for the purchase of two prototype vehicles—one to undergo a test fire and the other to drive around a test course. J.A. 64; 2449.

In July 2006, while the REF Contract was being finalized, REF sought input from the Army Research

Laboratory ("ARL") on the type of armor to be used on the vehicles.  J.A. 2452, 2733.  At REF's request, ARL and I-3 entered into a Cooperative Research and Development Agreement ("CRADA") to select the best armor to use on I-3's vehicle.  J.A. 1029–54, at 1031–32.  Pursuant to the terms of the CRADA, I-3 and ARL exchanged a mutual license to practice any invention that was "Made" in performance of work under the CRADA.  J.A. 1041.  The CRADA defines "Made" as referring to "the conception or first actual reduction to practice" of an invention."  J.A. 1030–31.

Relevant to the issue of reduction to practice, the prototype vehicles purchased under the REF Contract were assembled by a third-party, Ceradyne.  J.A. 2822.  The exact date Ceradyne completed assembly remains unclear, but Kocher maintains that the vehicles were fully assembled by February 1, 2007.  J.A. 2822–23.  There was also some confusion about the date on which the CRADA was executed because the last signatory failed to date his signature.  J.A. 3264–65.  The parties later stipulated that the CRADA was fully executed on February 10, 2007.  J.A. 3353–54.

On March 5, 2007, REF performed a test fire on the prototype vehicles that were assembled by Ceradyne.  J.A. 64.  Like the armor kit test fire of the year before, it was a success—the fully assembled prototype withstood attacks from EFPs.  J.A. 2805.  Despite this success and subsequent development efforts, the government ultimately rejected I-3's vehicle proposals.  J.A. 66–67.

## Procedural History

In October 2012, Kocher attended an industry symposium and found that his patented inventions were being used.  J.A. 378.  On June 29, 2017, Kocher sued the government in the United States Court of Federal Claims ("CFC") for patent infringement and misappropriation of trade secrets.  J.A. 58–80.  After a round of dismissal motions, the

CFC narrowed the case to two causes of action for patent infringement of the '648 and '008 Patents.  J.A. 1–21.

On October 5, 2018, Appellees[1] moved to dismiss the remaining two causes of action pursuant to Rule 12(b)(6), arguing that under the terms of the CRADA, the government had a license to practice the patented invention because the invention was actually reduced to practice during the term of the CRADA—specifically, on March 5, 2007, when the prototype vehicles were tested.  J.A. 933–36. Kocher maintained that the invention was reduced to practice before the date of execution of the CRADA, and that "resolution of that factual question [wa]s inappropriate on a motion to dismiss." *Ideal Innovations, Inc. v. USA*, No. 1:17-cv-00889-EJD, Dkt. No. 52, at 21 (Dec. 7, 2018). The CFC denied the motion to dismiss, noting that the arguments were more appropriate for a motion for summary judgment.  J.A. 1150.

On July 3, 2019, Appellees filed a motion for dismissal under Rule 12(b)(1) or, alternatively, for summary judgment.  J.A. 2393–765.  In their motion, Appellees argued that the patents were licensed to the government because they were first reduced to practice during the term of the CRADA.  J.A. 2423–26.  In opposition, Appellants maintained that "a genuine dispute as to a material fact exist[ed]" because "the March 10, 2006 test fire [w]as the first actual reduction to practice date." *Ideal Innovations*, No. 1:17-cv-00889-EJD, Dkt. No. 79, at 9–10 (July 31, 2019); *see also* J.A. 2811.  In other words, Appellants

---

[1]    Appellees Oshkosh Corporation, General Dynamics Land Systems, Inc., Force Protection, Inc., and General Dynamics Land Systems – Force Protection Inc. intervened as third-party defendants after the government served notices pursuant to Rule of the Court of Federal Claims ("Rule") 14.  J.A. 49–50.

contended that the inventions were reduced to practice about one year prior to the effective date of the CRADA.

On October 4, 2019, the CFC issued an order acknowledging "a genuine dispute of material fact as to the effective date of the CRADA" and ordering "a mini-trial on these issues only." J.A. 3253. The CFC permitted limited discovery on the issue of the CRADA's effective date. J.A. 3268. At the time, Appellants informed the CFC that "obviously [they] would be prepared to provide testimony from [Kocher] and others with regard to the reduction of practice and the ancillary issues that go with that, if that's necessary." J.A. 3285. But the CFC confirmed that "the point of the mini-trial" was to determine only "the effective date of the CRADA." *Id.*

On March 13, 2020, after brief discovery regarding the effective date of the CRADA, the parties filed a stipulation agreeing that the CRADA was fully executed no later than February 20, 2007. J.A. 3288. The stipulation also set forth the parties' respective positions in light of the agreed-upon facts. Appellants requested a hearing in lieu of a mini-trial:

> Simply put, drawing all reasonable inferences of fact in favor of [Appellants], the existing record compels, *inter alia*, the conclusions: (i) that *prior testing of the armor on March 10, 2006 established that the armor would work for its intended purpose*; and (ii) that the claims were reduced to practice by virtue of the armored vehicle that was built before Feb. 10, 2007.

J.A. 3291–92 (emphasis added) (internal citations omitted). On March 16, 2020, the CFC stayed further discovery in light of the stipulation. J.A. 3296.

The hearing requested by Appellants did not occur, nor did the mini-trial. On May 21, 2020, the CFC denied summary judgment because it determined there was "a

genuine issue of material fact regarding when the invention was first actually reduced to practice." J.A. 3299. Significantly, the CFC found "that the assembly of the armored vehicle as described in the patents [wa]s necessary to fulfill the requirement of a physical embodiment and that *actual testing of the armored vehicle [wa]s necessary to determine whether it work[ed] for its intended purpose.*" J.A. 3305 (emphases added). The CFC denied summary judgment specifically on the basis that the evidence did not establish whether the prototype vehicle was fully assembled before the CRADA's effective date. J.A. 3305–06.

Although the CFC denied summary judgment, it did not lift the stay on discovery. Instead, the CFC ordered another "mini-trial to determine the date of the first actual reduction to practice of the invention." J.A. 3310. In doing so, the CFC expressly "found" that "[t]he March 2006 test was a test of armor, not of the invention," and "[a]n actual test is necessary to prove that the prototype of the armored vehicle works for its intended purpose." *Id.* The CFC added, "These findings form the basis for the mini-trial and, at the trial, *may not be disputed.*" *Id.* (emphasis added).

On May 28, 2020, the CFC held a status conference to discuss dates for the mini-trial on the issue of reduction to practice. *Id.*; J.A. 3313–19. During the status conference, the CFC posed the following:

> [T]he testing had to be of an assembled vehicle and it had to be in conditions that sort of replicated what you would find in the field. . . . [I]s there any evidence of a test, the kind of test that I require in my opinion, that occurred prior to the effective date on the CRADA, which is February 20th, 2007?

J.A. 3314. Appellants admitted they would not "be able to present evidence to satisfy that standard," *id.*, but maintained that whether a POSA "would have understood that

the vehicle would actually work for its intended purpose," based on the coupon test fire, was "a factual question," J.A. 3315.[2]  The CFC acknowledged that Appellants were "correct that there is a factual element to the decision of what is necessary to prove that [an invention is] fit for its intended purpose." J.A. 3319.  Thus, the CFC agreed to let Appellants "go forward with their line of argument with regard to testing" at the mini-trial. *Id.*

On June 2, 2020, the CFC ordered supplemental briefing regarding "what evidence the [CFC] is permitted to consider in deciding the intended purpose of the invention." J.A. 3332–34.  In the same order, the CFC noted that, "[i]n proving that the invention worked for its intended purpose," Appellants would need to "establish the level of testing (if any), that is required to prove this element." J.A. 3334.  Appellants filed their supplemental brief on June 16, 2020. *See* J.A. 57.  And on June 18, 2020, the parties filed a second stipulation, agreeing that the CRADA's effective date was February 10, 2007.  J.A. 3353–54.

On June 23, 2020, Appellees filed their response supplemental brief with a 140-page appendix.  J.A. 3363–504. The appendix included four new declarations directed to the scope of testing required for a POSA to determine that the invention would work for its intended purpose. J.A. 3479–504.  Appellees urged the CFC to "determine the level of testing required to show whether the alleged

---

[2]    Also, at the May 28, 2020 status conference, Appellants' counsel represented that more evidence could likely be obtained to show that a full-scale test was not required for reduction to practice, but that Appellants lacked an adequate opportunity to seek such discovery because the first discovery period was cut short by Appellees' motion which resulted in a stay, and the second discovery period was limited in subject-matter to the issue of the CRADA's effective date.  J.A. 3316.

invention . . . works for its intended purpose." J.A. 3359. Highlighting their newly submitted declarations, Appellees argued that "the evidence clearly supports the finding that the alleged invention . . . requires actual testing" of a fully assembled vehicle. J.A. 3359–61. Appellees argued that a mini-trial was not necessary and asked the CFC to "grant [their] pending motion for summary judgment." J.A. 3361. The record does not reflect that the CFC ever authorized or invited any response by Appellants to Appellees' response supplemental brief. *See* J.A. 3334.

On July 3, 2020, the CFC issued an order cancelling the mini-trial and characterizing Appellees' supplemental brief as a "renewed" request for summary judgment. J.A. 36–39. The CFC "decide[d] it was overly indulgent in allowing [Appellants] to raise an argument at the mini-trial that it could have raised in its briefs but did not," and it reasserted its finding that reduction to practice required the invention "to be tested in the way determined by the [CFC]," i.e., by testing a fully assembled vehicle. J.A. 38. Because no testing of a fully operational armored vehicle took place before the CRADA's effective date, the CFC dismissed the action on summary judgment and advised Appellants they could "appeal to the Federal Circuit." *Id.* Appellants challenge the CFC's grant of summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

STANDARD OF REVIEW

"We review a grant of summary judgment by the Court of Federal Claims de novo." *FastShip, LLC v. United States*, 892 F.3d 1298, 1302 (Fed. Cir. 2018). Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact, and that the movant is entitled to judgment as a matter of law. *Id.*; RCFC 56(a). At the summary judgment stage, we view the facts supported by evidence, as well as all inferences drawn therefrom, in the light most favorable to the non-moving

party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A non-moving party can defeat summary judgment by identifying an "evidentiary conflict created on the record" as to any material issue of fact. *See Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984).

## DISCUSSION

Actual reduction to practice, at issue here, occurs when an inventor (1) constructs an embodiment or performs a process that meets all the limitations of the claimed invention, and (2) determines that the invention would work for its intended purpose. *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1075 (Fed. Cir. 2019) (citing *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998)). Whether an invention has actually been reduced to practice is a legal question based on subsidiary factual findings. *Taskett v. Dentlinger*, 344 F.3d 1337, 1339 (Fed. Cir. 2003).

"Testing is not itself a requisite for reduction to practice, although it may be a requisite for showing that a prototype demonstrates that an invention is suitable for its intended purpose." *Slip Track Sys. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1267 (Fed. Cir. 2002). Determining the intended purpose of an invention is a legal question considered in light of the claims and specification. *Manning v. Paradis*, 296 F.3d 1098, 1102-04 (Fed. Cir. 2002). Whether testing is necessary to determine an invention works for its intended purpose and whether a given test method is sufficient are questions of fact. *Barry v. Medtronic, Inc.*, 914 F.3d 1310, 1322 (Fed. Cir. 2019); *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1349 (Fed. Cir. 2007); *see also Scott v. Finney*, 34 F.3d 1058, 1061 (Fed. Cir. 1994) ("[T]he testing requirement depends on the particular facts of each case, with the court guided by a common[-]sense approach in weighing the sufficiency of the testing.").

Weighing evidence and performing factfinding at summary judgment "is an inappropriate exercise, at either the appellate or the district court level." *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1260 (Fed. Cir. 1985) (citing *Fountain v. Filson*, 336 U.S. 681, 683 (1949)); *accord Spigen Korea Co. Ltd. v. Ultraproof, Inc.*, 955 F.3d 1379, 1384 (Fed. Cir. 2020) ("[A] trial court is not free to find facts at the summary judgment phase."). If a reasonable factfinder could find in favor of the non-moving party, "a trial court must stay its hand and deny summary judgment." *Spigen Korea*, 955 F.3d at 1384.

The CFC determined that "[t[he intended purpose of the invention is to protect soldiers against various kinds of explosives while preserving mobility of the vehicle." J.A. 30. Appellants assert that "[t]he CFC legally erred by not defining the intended purpose of the invention as placing armor in the most vulnerable areas." BB 31. We agree with the CFC's view of the intended purpose of the invention. Looking to the claims and specification as a whole for guidance, we conclude that the CFC did not err in determining the intended purpose of the invention.

Appellants also contend that the CFC erred by resolving an issue of fact genuinely in dispute: whether the pre-CRADA testing proved the invention worked for its intended purpose. Appellants' Br. 33–36. We agree. The CFC found that "[t]he March 2006 [coupon] test was a test of armor, not of the invention," and that "[a]n actual test [of a fully assembled vehicle was] necessary to prove that the prototype of the armored vehicle works for its intended purpose." J.A. 3310. Relying on those factual findings, the CFC concluded that the invention was not reduced to practice before the CRADA's effective date because no fully assembled vehicle was tested before that date. J.A. 36–39.

Appellees contend that a fully assembled vehicle was required to test whether the invention would work for its intended purpose. Appellants maintain that the March

2006 coupon testing was sufficient because Kocher testified that the coupon testing proved the armor could withstand attacks from EFPs, and it was easy to calculate whether a commercially available vehicle chassis—with a known weight capacity—could be mobile while supporting the weight of the armor. J.A. 2823. According to Appellants, a reasonable factfinder could find that the coupon testing was sufficient to show that the invention worked for its intended purpose. *See generally Spigen Korea*, 955 F.3d at 1384.

We agree with Appellants. We cannot say that no reasonable fact finder could rely on Kocher's rather common-sense testimony to demonstrate that the coupon testing was sufficient to show that the invention would protect soldiers against various kinds of explosives while preserving mobility of the vehicle. Accordingly, the evidence demonstrates a genuine dispute about the scope of testing required for a POSA to determine the invention would work for its intended purpose. An inventor's factual testimony regarding reduction to practice must be corroborated by some other evidence. *See Unifrax I*, 921 F.3d at 1076 (citing *Price v. Symsek*, 988 F.2d 1187, at 1194 (Fed. Cir. 1993)). But "'[t]here is no particular formula' required for corroboration, and instead, a 'rule of reason' analysis applies to the evaluation of all pertinent evidence." *Id.* (quoting *Singh v. Brake*, 317 F.3d 1334, 1341 (Fed. Cir. 2003)). For example, here, Kocher's declaration testimony is corroborated by the existence of the REF Contract. A reasonable factfinder could conclude that REF issued a purchase order for the prototype vehicles based on its conclusion that the armor was sufficiently tested to expect that the invention worked for its intended purpose. J.A. 2649, REF Contract; *see also* J.A. 2682–83. Although the government may have desired more testing, "[r]eduction to practice does not require that the invention, when tested, be in a commercially satisfactory stage of development." *Scott*, 34 F.3d at 1061 (internal quotation marks omitted). Indeed,

"[t]esting need not show utility beyond a possibility of failure, but only utility beyond a probability of failure." *Id.* at 1062.

We hold that the CFC erred in granting summary judgment because a genuine dispute exists as to an issue of material fact—namely, whether a POSA would have known, based on the coupon testing, that the invention would work for its intended purpose. *See Barry*, 914 F.3d at 1322; *z4 Techs.*, 507 F.3d at 1349. The CFC erred when it granted summary judgment based on its resolution of that disputed factual issue. *See Spigen Korea*, 955 F.3d at 1384 (citing *Lemelson*, 760 F.2d at 1260).

## CONCLUSION

We reverse the CFC's grant of summary judgment and remand for further proceedings consistent with this opinion.

### REVERSED AND REMANDED

## COSTS

Costs to Appellants.

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IDEAL INNOVATIONS, INC., RIGHT PROBLEM, LLC, ROBERT KOCHER,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES, OSHKOSH CORPORATION, GENERAL DYNAMICS LAND SYSTEMS, INC., FORCE PROTECTION, INC., GENERAL DYNAMICS LAND SYSTEMS - FORCE PROTECTION, INC.,**
*Defendants-Appellees*

---

2020-2065

---

Appeal from the United States Court of Federal Claims in No. 1:17-cv-00889-EJD, Senior Judge Edward J. Damich.

---

HUGHES, *Circuit Judge*, concurring.

I concur in the judgment. I agree that the sufficiency of testing to show reduction to practice is a factual issue that should not have been decided at summary judgment and that Appellants preserved—but just barely—that argument. I write separately, however, to emphasize that I do not fault the trial court for this error. In failing to make clear that the issue was factual in nature, and not legal,

Appellants invited such error. Moreover, although the trial court should have decided sufficiency of testing as a factual, rather than a legal issue, the record evidence would have fully supported its decision as a matter of fact.

I

On March 10, 2006, Appellant Robert Kocher conducted a test fire on armor coupons alone. J.A. 2823. A fully assembled armored vehicle prototype was not tested until March 2007, after the stipulated February 10, 2007 execution date of the CRADA. J.A. 64, 3288–89. Appellants now assert that the coupon testing along with Mr. Kocher's own testimony, some photographs of an assembled vehicle, and weight calculations that allegedly show that the vehicle could have been mobile are sufficient to demonstrate that the invention would have worked for its intended purpose and was therefore reduced to practice in 2006. But Appellants never focused on testing as a factual dispute that should have precluded a finding of summary judgment before the Court of Federal Claims. And their failure to do so induced the trial court's erroneous legal finding.

The proceedings before the trial court focused on the effective date of the CRADA, rather than the sufficiency of the coupon testing. Appellees initially moved for Rule 12(b)(6) dismissal, contending that the government had an express license to practice the invention under the CRADA. J.A. 933–36. Appellees contended the CRADA was signed and executed on or before December 21, 2006. Appellees further argued that the invention was actually reduced to practice on the date the fully assembled prototype vehicle was tested, March 5, 2007, during the term of the CRADA. J.A. 933–36. In response, Appellants argued that December 2006 was "not the proper measuring date for a reduction to practice to fall within the" CRADA, because while Mr. Kocher had signed the agreement on December 10, 2006, the government representative's signature was undated. Response to Motion to Dismiss at 21, *Ideal*

*Innovations, Inc. v. United States*, No. 1:17-cv-00889 (Fed. Cl. Dec. 7, 2018), ECF No. 52. Instead, Appellants contended that the government did not sign and execute the CRADA until February 10, 2007 or later. *Id.* at 22. The trial court denied Appellees' motion to dismiss because their arguments were "more properly considered in a motion for summary judgment." J.A. 1150.

Appellees then moved for dismissal under Rule 12(b)(1) or, alternatively, for summary judgment, again arguing that the patents were first reduced to practice in March 2007, during the term of the CRADA and therefore under the license. J.A. 2423–31. In response, Appellants argued that summary judgment was inappropriate because several genuine disputes of material facts existed, including the scope of the CRADA and its effective date, and the date of the first actual reduction to practice, which it identified as the March 2006 coupon test fire. J.A. 2810–12.

The trial court issued an order on October 4, 2019, stating that Appellants had "identified a genuine dispute of material fact as to the effective date of the CRADA" and that it would hold a mini-trial on that issue only. J.A. 3253. It then held a status conference on October 9, 2019, that focused primarily on the disputed effective date of the CRADA. J.A. 3263–86. Appellants did note at the end of the conference that they "would be prepared to provide testimony from [Mr. Kocher] and others with regard to the reduction to practice and the ancillary issues that go with that, if that's necessary." J.A. 3285. But they did not specifically suggest that the mini-trial should extend to the testing issue. The parties conducted discovery and then issued a joint stipulation that the effective date of the CRADA was no later than February 20, 2007 (later changed to February 10, 2007). J.A. 3288–89. Given that stipulation, Appellees argued that the only genuine dispute of material fact that the trial court had identified had been resolved, and thus asked the court to rule on its motion for summary judgment. J.A. 3292. Appellants also, for the first

time, directly requested a hearing on the issue of whether the 2006 coupon testing established that the invention would work for its intended purpose and was reduced to practice. J.A. 3292.

The trial court denied summary judgment because it found that there was "a genuine issue of material fact regarding when the invention was first actually reduced to practice." J.A. 3299. In doing so, it determined that "[t]he intended purpose of the invention is to protect soldiers against various kinds of explosives while preserving the mobility of the vehicle," J.A. 3305, a legal conclusion with which we have found no error. Maj. Op. at 11. Given that purpose and the common-sense approach of *Scott v. Finney* in determining the sufficiency of testing to show reduction to practice, the trial court concluded that "[a]n actual test is necessary to prove that the prototype of the armored vehicle works for its intended purpose." J.A. 3305 (citing *Scott v. Finney*, 34 F.3d 1058, 1063 (Fed. Cir. 1994)), 3310.

This legal conclusion, as stated in the majority, was error because the sufficiency of testing is a question of fact, not law. Maj. Op. at 12–13. But Appellants did not make clear this was a question of fact prior to the summary judgment ruling. In denying Appellees' motion for summary judgment, the trial court did note Appellants' assertion that "a fully operational, painted, tested, and delivered BULL was shown no later than February 22, 2007." J.A. 3305. But the court pointed out problems with that assertion, including that Appellants only offered photographs of the BULL in various states of assembly and Mr. Kocher's testimony as supporting evidence, which, the court found, did not alone "prove that the BULL ha[d] been 'tested.'" J.A. 3303. The court "believe[d] that this [testing] assertion [was] based on the armor tests in March 2006 and/or on the mere assembly of the armored vehicle . . . . Surely if there were an actual test of the invention's workability, [Appellants] would proffer such evidence. But the [c]ourt [was] not certain" from the briefing alone. J.A. 3306.

At a status conference following its ruling on the summary judgment motion, the trial court asked Appellants if there was evidence of the kind of testing that it required—i.e., actual testing of the armored vehicle. J.A. 3314. Appellants responded that if an actual test of a fully assembled armored vehicle prior to the execution of the CRADA was necessary, then they were "not going to be able to present evidence to satisfy that standard before March of 2007." J.A. 3314. While Appellants took issue with the testing requirement, they did not specifically identify it as a genuine issue of material fact that should preclude summary judgment, even when asked by the court:

> THE COURT: So—but you're disputing, I guess, the fact that by holding that you had to have the vehicle with the armored configuration in the patent . . . shot at, is one way of providing that it actually works for its intended purpose. Is that correct?
>
> [APPELLANTS]: Right. That is one way. It's a sufficient but not a necessary way to do it. . . . [W]hether [a POSA], looking at the testing, even if it wasn't a fully assembled device, would have understood that it would work for its intended purpose . . . is, in effect, what we would be challenging, Your Honor.
>
> And so I guess *I would say that it's both*—because issues of reduction to practice are—*it's a question of law based on underlying issues of fact* . . . our dispute would be probably on both of those fronts, that we have sufficient facts to meet our preponderance of the evidence standard [prior to the date of execution of the CRADA] and that that is because *a fully constructed vehicle as a matter of law, we would say, is a requirement in the prevailing law.*

J.A. 3315 (emphases added). The court pointed out that it "wish[ed] that in the submissions that the [Appellants] would have seized upon the [Appellees'] argument . . . that even if the physical embodiment was there, that it still had to be tested for its intended purpose," and that "there were opportunities to bring up these arguments during the summary judgment submissions and they weren't brought up." J.A. 3319. Still, the court acknowledged that Appellants are "correct that there is a factual element to the decision of what is necessary to prove that it[']s fit for its intended purpose" and allowed them to "go forward with their line of argument with regard to testing." J.A. 3319.

In an order issued on June 2, 2020, the trial court granted Appellants an opportunity to brief an argument that full assembly of the vehicle, coupled with the March 2006 armor coupon testing, was sufficient to prove the vehicle worked for its intended purpose. But it again pointed out that the argument was missing from the Appellants' summary judgment brief. J.A. 3332. In their supplemental briefing on intended purpose, Appellants argued that the successfully tested armor coupons, plus the known weight of the armor and the carrying capacity of the vehicle, would show that the vehicle worked for its intended purpose. J.A. 3349. Appellees responded that the "alleged invention, a new kind of armored vehicle, requires actual testing 'under circumstances approaching actual use conditions' because the problem being solved is complex and has many variables." J.A. 3359 (citing *Scott*, 34 F.3d at 1063). The trial court treated Appellees' response as a renewed motion for summary judgment and granted it, finding that the court had been "overly indulgent" in allowing Appellants to raise an argument at the mini-trial that they did not originally brief. J.A. 41–44.

## II

Appellants should have made clear that the necessity and sufficiency of testing was a factual issue, not legal, at

the trial court. Appellants' arguments primarily focused on the effective date of the CRADA as the key factual issue, not whether the March 2006 coupon testing was a reduction to practice. While it is true that the trial court wanted to focus on the effective date of the CRADA as a genuine issue of material fact, Appellants never fully briefed the issue of testing nor clearly challenged it as a factual issue to the trial court, hardly placing the court on notice that there was a factual dispute regarding coupon testing as sufficient testing to reduce to practice.

The trial court's intended-purpose finding, which is a legal conclusion, is correct—"[t]he intended purpose of the invention is to protect soldiers against various kinds of explosives while preserving the mobility of the vehicle." J.A. 30; Maj. Op. at 11. And though the trial court erred in concluding that an actual test of a prototype armored vehicle was necessary *as a matter of law*, it could have determined that no reasonable jury would have found that Appellants had shown that the vehicle would work for its intended purpose as of 2006.

To support its assertion that "a fully-operational, painted, tested, and delivered BULL was shown by February 22, 2007," Appellants cited only to Mr. Kocher's declaration and photos of a vehicle in various states of assembly. J.A. 2802 (citing J.A. 2583–86, 2598–2604, 2822–23). Asked at oral argument whether there was additional evidence beyond the coupon testing, declaration, and photos, Appellants could only point to an email from an employee of Ideal Innovations that "goes to the issue of mobility." Oral Argument at 34:30–35:29, https://oralarguments.cafc. uscourts.gov/default.aspx?fl=20-2065_06082021.mp3. This email merely states that Appellants "ha[d] not come to grips yet with the total weight of the system but the [Gross Vehicle Weight] for the [commercial vehicle chassis] is 33,000 pounds," and the current vehicle weight was "somewhere in the 30 to 31,000 pound range of 'STUFF' including armor, crew equipment, payload, etc." J.A. 2490–91.

The trial court could have reasonably concluded that no reasonable jury could find that Appellants had shown that the invention would have worked for its intended purpose based solely on testing of pre-existing armor, uncertain weight calculations, and the inventor's own testimony, especially when the intended purpose was "to protect soldiers against various kinds of explosives while preserving the mobility of the vehicle." J.A. 30. Mr. Kocher himself emphasized that "the prevailing consensus was that it would be impossible to design a cost-effective, functional wheeled vehicle that could provide protection from [explosively formed projectiles]," and that his solution to this impossible problem "was to *integrate* and *configure* this heavy armor on a vehicle that would protect the personnel from the unique angles from which [explosively formed projectiles] were fired without adding so much weight of armor that it could not be carried." J.A. 3406 (emphases added). Although the vehicle was created for both mobility and protection, the record does not contain any evidence of mobility or protection tests done where the test armor was actually integrated and configured on the vehicle—i.e., as a fully assembled prototype.

Because the trial court should have considered the sufficiency of the testing as a factual issue, rather than a legal one, I concur in the judgment.